## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **CERTIFIED MEASUREMENT, LLC,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **NO. 2:14-cv-627** |
| | § | |
| **CENTERPOINT ENERGY HOUSTON** | § | **JURY TRIAL DEMANDED** |
| **ELECTRIC, LLC and ITRON, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF THE ISSUES.......................................................................... 2

III.    FACTUAL OVERVIEW ...................................................................................... 3

IV.     THE COMPLAINT SHOULD BE DISMISSED ................................................. 6

      A.      The Legal Standard to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ................................................................................................. 6

      B.      Patent Eligibility Should Be Addressed at the Rule 12 Stage ............... 6

      C.      The Asserted Patents Attempt to Claim Abstract Ideas......................... 8

      D.      Reciting a Computer Does Not Salvage the Claims ............................ 11

      E.      Reciting the Collection of Data Does Not Salvage the Claims ........... 15

V.      THE COMPLAINT IMPROPERLY PLEADS INDIRECT INFRINGEMENT ........... 16

VI.     IN THE ALTERNATIVE, THE COURT SHOULD ORDER A MORE DEFINITE STATEMENT FROM THE PLAINTIFF................................................... 18

VII.    CONCLUSION.................................................................................................. 19

10145-6021/LEGAL122640167.1

# TABLE OF AUTHORITIES

Page

CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013).................................................................................................11

*Alice Corp. Pty. Ltd. V. CLS Intern.*,
  13-298, 2014 WL 2765283 (U.S. June 19, 2014)...................................................9, 10, 11, 15

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964).................................................................................................................16

*Ashcroft v. Iqbal*,
  U.S. 662 (2009)..........................................................................................................................6

*Babbage Holdings, LLC v. Activision Blizzard, Inc.*,
  No. 13-750, 2014 WL 2115616 (E.D. Tex. May 15, 2014)...........................................2, 16, 17

*Bancorp Services v. Sun Life Assurance Co.*,
  687 F.3d 1266 (Fed. Cir. 2012)...........................................................................................7, 14

*Bell Atl.Corp. v. Twombly*,
  550 U.S. 554 (2007)....................................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................8

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010).................................................................................................7, 8, 9, 10

*Brandywine Comms. Techs., LLC v. Casio Computer Co. Ltd.*,
  912 F. Supp.2d 1338 (M.D. Fl. 2012).......................................................................................17

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  No. 12-674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) (Davis, J.)....................................1, 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  2013 WL 3964909 (D. N.J. July 31, 2013)................................................................................7

*Cyberfone Sys., LLC v. CNN Interactive Grp. Inc.*,
  2014 WL 718153 (Fed. Cir. Feb. 26, 2014)........................................................................7, 16

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011).........................................................................6, 12, 14, 16

10145-6021/LEGAL122640167.1

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*DDR Holdings, LLC v. Hotels.com LP*,
    954 F. Supp.2d 509 (E.D. Tex. 2013) (Gilstrap, J.) .................................................14

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) ................................................................ passim

*Diamond v. Diehr*
    450 U.S. 175 (1981) .................................................................................10

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) .....................................................................13

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*,
    333 U.S. 127 (1948) ...................................................................................9

*Garrett v. Celanese Corp.*,
    No. 3:02-cv-1485-K, 2003 WL 22234917 (N.D. Tex. Aug. 28, 2003), *aff'd*
    102 Fed. Appx. 387 (5th Cir. 2004) ..................................................................6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ..............................................................................16

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ...............................................................................11, 12

*Guidry v. Am. Public Life Ins. Co.*,
    512 F.3d 177 (5th Cir. 2007) .........................................................................6

*i2 Technologies, Inc. v. Oracle Corp.*,
    2010 WL 8669837 (E.D. Tex. 2010) ................................................................19

*Internet Patents Corp. v. Gen. Auto. Ins. Servs.*,
    2013 WL 7936688 (N.D. Cal. Sep. 24, 2013) .......................................................7

*Lumen View Tech. LLC v. Findthebest.com*,
    984 F.Supp.2d 189 (S.D.N.Y. 2013) .................................................................7

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    2013 WL 6164341 (S.D.N.Y. 2013) ...............................................................7, 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ...........................................................................8, 9, 15

## TABLE OF AUTHORITIES
### (continued)

Page

*Parallel Networks, LLC v. Abercrombie & Fitch*,
 2011 WL 3609292 (E.D. Tex. Aug. 12, 2011) .........................................................................8

*Parker v. Flook*,
 437 U.S. 584 (1978)...............................................................................................................15

*Proxyconn, Inc. v. Microsoft Corp.*,
 No. 11-1681, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ...................................................17

*UbiComm, LLC v. Zappos IP, Inc.*,
 2013 WL 6019203 (D. Del. Nov. 13, 2013) .............................................................................7

*Ultramercial, Inc. v. Hulu, LLC*,
 722 F.3d 1335 (Fed. Cir. 2013)..........................................................................................7, 13

*Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc.*,
 2013 WL 7393173 (E.D. Tex. Mar. 27, 2013) ........................................................................6

*Xpoint Techs, Inc. v. Microsoft Corp.*,
 730 F. Supp.2d 349 (D. Del. 2010)........................................................................................17

STATUTES

35 U.S.C. § 101........................................................................................................... passim

OTHER AUTHORITIES

Fed. R. Civ. P. 11(b)(3)...........................................................................................................18

Fed. R. Civ. P. 12(b)(6)................................................................................................... passim

Fed. R. Civ. P. 12(e) .....................................................................................................2, 18, 19

## I.       INTRODUCTION

Defendants CenterPoint Energy Houston Electric, LLC ("CenterPoint") and Itron, Inc. ("Itron") (collectively, "Defendants") seek an order dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because: (1) the asserted patents  are directed to ineligible subject matter under 35 U.S.C. § 101; and (2) the Complaint improperly asserts knowledge of the patents based on the filing of the Complaint for purposes of indirect infringement.  More specifically, the patents are directed to an abstract idea—modifying data related to the  measurement of a physical property.  The patents claim methods and devices allegedly covering any sensor, and appear to cover any modification of such data.

The Supreme Court and Federal Circuit have held that patents cannot claim broad concepts that usurp all applications of an abstract idea.  In the instant case, plaintiff is seeking to do precisely that—it asserts its patents cover the "certification" or "validation" of data from defendants' electric meters although the patents never refer to electric meters.  In essence, plaintiff asserts that the modification of any data from a sensor (i.e., something that takes a measurement of a physical property), so as to verify its validity, infringes the patents.  Under plaintiff's reasoning, sensing the temperature of bath water and conveying the results in "Pig Latin" would infringe the method steps.

The courts, based on guidance from the Supreme Court, are increasingly holding that such patents are invalid as a matter of law under 35 U.S.C. § 101.  Further, such determinations can and should be made at the Rule 12 stage.  *See Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 12-674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) (Davis, J.) (granting motion for judgment on pleadings and holding claims invalid under Section 101 for covering unpatentable abstract ideas).  Because plaintiffs' patents are directed to the abstract idea of modifying data from a sensor, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

Further, the Complaint asserts that Defendants have indirectly infringed because, in part, they knew of the patents "at least as of the filing of the Complaint."  ECF No. 1, Compl. at ¶¶ 37, 43-44, 50, 56-57, 63, 69-70, 76, 82-83.  This Court has held that such pleading is improper.  *See Babbage Holdings, LLC v. Activision Blizzard, Inc.*, No. 13-750, 2014 WL 2115616 (E.D. Tex. May 15, 2014) (dismissing with prejudice indirect infringement claims because patentee failed to plead knowledge of the patent-in-suit prior to filing of complaint).

At the least, the Court should order plaintiff under Fed. R. Civ. P. 12(e) to identify which of the 387 claims in the patents are allegedly infringed.  By failing to identify any allegedly infringed claims in its Complaint, neither Defendants nor the Court can determine whether any of the asserted claims are directed to patentable subject matter.  A more definite statement will allow Defendants to reasonably and properly prepare a response to the Complaint.  Plaintiff, on the other hand, should have already investigated its claim before filing this action and thus has no reason not to inform Defendants which claims are at issue.

## II.      STATEMENT OF THE ISSUES

Whether the action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the four asserted patents attempt to cover an abstract idea that, as a matter of law, is ineligible as patentable subject matter under 35 U.SC. § 101.

Whether the indirect infringement claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on the separate ground that plaintiff's claims of indirect infringement are insufficient for failure to plead the requisite knowledge element, where the only allegation that purports to establish Defendants' knowledge of the patents is the filing of the Complaint itself.

Whether, alternatively, plaintiff should be required to provide a more a definite statement of its infringement contentions under Fed. R. Civ. P. 12(e) in view of the asserted patents having 387 claims.

III.    FACTUAL OVERVIEW

The Complaint asserts infringement of four patents—U.S. Patent Nos. 5,828,751 ("the

'751 patent"); 6,282,648 ("the '648 patent"); 6,289,453 ("the '453 patent"); and 8,549,310 ("the

'310 patent") (collectively, "the asserted patents")—entitled "Method and Apparatus for Secure

Measurement Certification."  As reflected on the face of the patents, the patents are part of a

family of patents based on the '751 patent application.[1]  They have identical specifications and

only minor differences between their four sets of claims.  The specification begins by explaining

that the general nature of the invention relates to "certifying" physical measurements:

> The present invention relates generally to methods and apparatuses
> for acquiring and certifying physical measurements.  More
> particularly, the invention relates to acquiring and
> cryptographically certifying a measurement representative of a
> physical parameter, such that the measurement can be verified at a
> later time.

'751 Patent at 1:6-11.

The Summary of the Invention explains that the invention can be implemented for any

physical measurement with a "wide variety" of "cryptographic protocols":

> An object of the present invention is to provide an apparatus and
> method for acquiring and certifying a physical measurement, using
> a wide variety of cryptographic protocols, in a manner that the
> physical measurement and its time of acquisition can be verified by
> a later recipient of the certified measurement.  Another object of
> the invention is to provide an apparatus and method for certifying
> where a physical measurement was acquired.  Yet another object
> of the invention is to provide an apparatus and method for reliably
> associating the actual physical measurement with the certified
> measurement.  As will be appreciated by those skilled in the art,
> terms such as certified measurement, certified message,

---

[1] The '648 patent is a continuation of the '751 patent; the '453 patent is a divisional of the '751 patent; the '310 patent originally issued as a continuation of the '751 patent.  After the '310 patent issued, the patentees petitioned to withdraw the patent from issue in order to claim priority to a prior-filed application. The petition was granted and the patent reissued as a continuation-in-part of the '751 patent. The specifications of the '310 and '751 patents differ only in the section entitled "Cross-Reference Related Applications."  For the sake of brevity, the specification of the '751 patent is cited throughout unless otherwise noted.

> certification, and other equivalents may all be used to note the
> output of the measurement certification device.

'751 Patent at 3:53-67.

According to the patent, the physical parameter to be measured

> could be any physical quantity measureable by a sensor and
> representable in digital form, including location data, biometric
> data, temperature, humidity, light levels, noise levels, precipitation,
> pressure, momentum, odor, air pollution, car exhaust, water purity,
> weight, orientation, acidity, proximity, opacity, radioactivity,
> viscosity, chemical content and any other physical parameter
> whose value and time of measurement is to be certified to a
> recipient for later verification.

*Id.* at 4:16-24.

Further, the patent does not limit the nature of the "cryptographic processing" required:

> For example, where the primary concern is integrity, a simple one-
> way algorithm, e.g., a hash, message authenticity code (MAC), or
> cyclic redundancy check (CRC) might be adequate. . . . even
> greater assurance can be provided by providing unique IDs,
> challenge-response protocols, digital certificates, combinations of
> symmetric and asymmetric (public key) encryption, and many
> other cryptographic techniques, in patterns appropriate to the
> particular application at hand.

*Id.* at 4:25-42.

In other words, the patent essentially discloses the concept of taking a measurement of

any physical parameter, and cryptographically processing it by, essentially, any means.  Notably,

the patents never mention, in the specification or the claims, electric meters or the transmission

of usage information from an electric meter.

The patents contain 387 claims.  Consistent with the specification, the claims allegedly

encompass *any* physical measure, and *any* method of "cryptographically" processing the

measurement.  Method claim 20 of the '310 patent, for example, recites as follows:

20. A method comprising:

receiving, by a computing device via an input device, a first signal that is based at least in part on a physical measurement;

receiving, by the computing device via the input device, a second signal that is based at least in part on a time;

generating, by the computing device, an augmented measurement based at least in part on the first signal and the second signal; and

performing, by the computing device using a cryptographic processor, a cryptographic operation on at least a portion of the augmented measurement to generate a certifiable measurement.

'310 Patent at 20:8-20.  Similarly, claim 14 recites an apparatus as follows:

14. An apparatus comprising:

an input device configured to receive a first signal and a second signal, the first signal being based at least in part on a physical measurement, and the second signal being based at least in part on a time; and

a processor in communication with the input device and configured to:

generate an augmented measurement based at least in part on the first signal and the second signal, and

perform a cryptographic operation on at least a portion of the augmented measurement to generate a certifiable measurement.

'310 Patent at 19:18-29.

As is evident, these claims are not directed to measuring any specific parameter or using any specific type of device or cryptographic processor (much less directed to electric meters or the transmission of electric meter data to a base).  Instead, they are directed to the abstract notion of measuring *any* physical parameter, and performing *any* "cryptographic" process.

## IV.     THE COMPLAINT SHOULD BE DISMISSED

### A.     The Legal Standard to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the assertions alleged in the complaint.  *Garrett v. Celanese Corp.*, No. 3:02-cv-1485-K, 2003 WL 22234917, at *1 (N.D. Tex. Aug. 28, 2003), *aff'd* 102 Fed. Appx. 387 (5th Cir. 2004).  In evaluating a Rule 12(b)(6) motion, the ultimate question is whether or not the plaintiff's complaint, when viewed in a light most favorable to the plaintiff states a valid cause of action.  *Id.*  The court should "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (internal quotation marks and citation omitted).  However, "[w]hen the allegation in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl.Corp. v. Twombly*, 550 U.S. 554, 558 (2007), as discussed in *Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc.*, 2013 WL 7393173, at *1 (E.D. Tex. Mar. 27,  2013) (internal quotation marks and citations omitted).

It is equally clear that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, U.S. 662, 678 (2009).

### B.     Patent Eligibility Should Be Addressed at the Rule 12 Stage

Whether a patent claim recites patent-eligible subject matter under 35 U.S.C. § 101 is a question of law.  *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1367-69 (Fed. Cir. 2011).  And when "the only plausible reading of the patent must be that there is clear and convincing evidence of

ineligibility" the patent must be invalidated at the pleading stage.  *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 2013 WL 6164341 (S.D.N.Y. 2013), *citing Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013).  For this reason, courts have increasingly dismissed cases under Fed. R. Civ. P. 12(b)(6) where the asserted patents do not meet the standards for patentable subject matter under § 101.  *See, e.g.*, *Clear with Computers, LLC v. Dick's Sporting Goods, iNC.*, 2014 WL 923280 (E.D. Tex. January 21, 2014); *UbiComm, LLC v. Zappos IP, Inc.*, 2013 WL 6019203 (D. Del. Nov. 13, 2013); *Internet Patents Corp. v. Gen. Auto. Ins. Servs.*, 2013 WL 7936688 (N.D. Cal. Sep. 24, 2013); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 2013 WL 3964909 (D. N.J. July 31, 2013).

No discovery is needed to resolve the question of law that is posed by this motion.  Nor is claim construction required to decide the patent eligibility question.  *See Cyberfone Sys., LLC v. CNN Interactive Grp. Inc.*, 2014 WL 718153, at *2 n.1 (Fed. Cir. Feb. 26, 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility").  This is "because eligibility is a 'coarse' gauge of the suitability of broad subject matter categories for patent protection, . . . [and therefore] claim construction may not always be required for a § 101 analysis."  *Lumen View Tech. LLC v. Findthebest.com*, 984 F.Supp.2d 189, 205 (S.D.N.Y. 2013).  In support of its holding that claim construction is not required prior to a Section 101 analysis, the Federal Circuit has "cited [*Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010)], noting that the Supreme Court 'f[ound] subject matter ineligible for patent protection without claim construction."  *Bancorp Services v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

In the instant case, the Court should address the invalidity of the claims now, before the Court and parties waste additional time and resources..  *See, e.g., Clear with Computers*, 2014

WL 923280 at *3-4 (noting that a *Markman* "is not strictly necessary" and accepting non-movant's construction for § 101 analysis).  The Court should address this dispositive issue of law now "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *see also Parallel Networks, LLC v. Abercrombie & Fitch*, 2011 WL 3609292, *10 (E.D. Tex. Aug. 12, 2011) (resolving case "in a manner of months - as opposed to years" by addressing three dispositive legal issues at outset of case).

The asserted patents here do not present a close question that will turn on either claim construction or discovery.  None of the claims recite specific hardware or software configured to perform the claimed encryption process.  To the contrary, in their specification, the patentees admit that the claimed encryption step may be performed by "any hardware or software engine capable of performing cryptographic operations." '751 Patent at 7:7-9.  The Court needs no additional information to conclude that the devices and methods claimed in the asserted patents are abstract ideas.

### C.     The Asserted Patents Attempt to Claim Abstract Ideas

Section 101 of the Patent Act defines the four categories of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent thereof, subject to the conditions of this title.

35 U.S.C. § 101.

The Supreme Court has ruled time and time again that "laws of nature," "physical phenomena," and "abstract ideas" may not be removed from the public domain and owned as private property under our patent laws. *Bilski v. Kappos*, 130 S. Ct. at 3225; *Mayo Collaborative*

*Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012).  Such fundamental truths are "part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none."  *Bilski*, 130 S. Ct. at 3225 (quoting *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948); *see also Mayo*, 132 S. Ct. at 1301.  The abstract ideas category "embodies the longstanding rule that an idea of itself is not patentable."  *Alice Corp. Pty. Ltd. V. CLS Intern.*, 13-298, 2014 WL 2765283, at *6 (U.S. June 19, 2014).  Abstract ideas are ineligible for patent protection because "they are the basic tools of scientific and technological work."  *Id.*  A monopoly over such ideas would "risk disproportionately tying up the use of the underlying ideas" and "tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws."  *Id.* at *5-6.

Patent eligibility is evaluated from the perspective of claims.  *Dealertrack*, 674 F.3d at 1334 ("In considering patent eligibility under § 101, one must focus on the claims").  Simply taking an abstract idea and adding steps—or breaking it into steps—that involve "well understood," "routine," or "conventional" activity contributes nothing inventive to an otherwise abstract idea, leaving only the abstract idea as the subject matter of the claims.  *Mayo*, 132 S. Ct. at 1294, 1299.  In *Alice*, the Court confirmed the framework for determining patent eligibility established in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012): "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts [laws of nature, natural phenomena, and abstract ideas.]  If so, we then . . . consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." 2014 WL 2765283, at *6.  Under this framework, a claim that recites an abstract idea must

include "additional features" to ensure that the claim amounts to "significantly more" than the abstract idea itself. *Id.* at *7.

The claims of the asserted patents are invalid under 35 U.S.C. § 101 because they claim an abstract idea.  Put differently, the asserted patents attempt to preempt the field of modifying data generated by a sensor.  Indeed, the patent specification indicates that the potential applications are unlimited and would include data on:

> "*any* physical quantity measurable by a sensor and representable in digital form, including location data, biometric data, temperature, humidity, light levels, noise levels, precipitation, pressure, momentum, odor, air pollution, car exhaust, water purity, weight, orientation, acidity, proximity, opacity, radioactivity, viscosity, chemical content, and *any* other physical parameter whose value and time of measurement is to be certified to a recipient for later verification"

'751 Patent, 4:16-24 (italics added).

"Allowing a patent holder to patent a broad process would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Lumen View Tech. LLC v. Findthebest.com, Inc.*, No. 13-3599, 2013 WL 6164341, citing *Bilski*, 130 S. Ct. at 3231 (2010).  Unlike the process held patentable in *Diamond v. Diehr* 450 U.S. 175 (1981), which was directed to a specific application (curing rubber), the patents in this case seek to preclude any techniques for modifying data generated by a sensor.  Indeed, the fact that they are overbroad is reflected by their assertion against Defendants—the patents never mention the modification of the measurement of voltage or current, or electric meters at all.  Nevertheless, the patents are being asserted against such devices and methods.  Permitting plaintiff this level of preemption would be inconsistent with the balance the patent system has struck between promoting innovation and allowing the widespread use of new and productive invention and discoveries.

The Supreme Court's decision in *Gottschalk v. Benson*, 409 U.S. 63 (1972), is instructive.  In *Benson*, the Court lamented that the claimed process of converting binary decimals was "so abstract and sweeping as to cover both known and unknown uses of the [mathematical concepts] . . . vary[ing] from the operation of a train to verification of drivers' licenses to researching the law books for precedents."  *Id.* at 68.  Here, as there, permitting the patenting of the abstract idea of data encryption would cover "known and unknown uses" - as the specification of the asserted patents makes clear.

### D.      Reciting a Computer Does Not Salvage the Claims

The fact that some claims of the asserted patents refer to the use of a computing device does not save them.  Merely reciting a computer as implementing an abstract principle does not make such a claim patentable.[2]  The Supreme Court unanimously confirmed as much in *Alice*, 2014 WL 2765283, at *3 (U.S. June 19, 2014), holding that an abstract idea implemented on a generic computer is patent ineligible subject matter.

In *Alice*, the Supreme Court reaffirmed its prior holding in *Benson* that simply implementing  a mathematical principle on a computer is "not a patentable application of that principle."  2014 WL 2765283 at *6-7.  The Court recognized that a "'a novel and useful structure created with the aid of knowledge of scientific truth'" might be patentable.  *Id.* at 67. But since the claimed mathematical principle had "no substantial practical application except in connection with a digital computer,"  the Court found that the claim was overly broad in that it did not differ significantly from a claim that just said "apply the algorithm."  *Id.* at 71.  In finding that the asserted patents did not cover patent eligible subject matter, the *Benson* Court reasoned

---

[2] *See generally Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[S]imply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) ("simply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible.").

that the mathematical procedures required by the claimed algorithm could "be carried out in existing computers long in use, no new machinery being necessary." *Benson*, 409 U.S. at 67. The generic "computing device" in Certified Measurement's independent claims do not meaningfully limit them any more than did the general purpose computer in *Benson*.

Several recent Federal Circuit cases are accord.  For example, in *CyberSource*, the patent claimed the less abstract process of detecting "fraud in a credit card transaction" in six, common-sense steps: (1) obtaining credit card information; (2) verifying the information; (3) evaluating the information to provide an indication of whether a transaction is fraudulent; (4) obtaining information about other credit card transactions from the same internet address; (5) constructing a map of credit card numbers associated with the address; and (6) utilizing the map of credit card numbers to determine if the transaction was likely made by the card's rightful owner. *CyberSource*, 654 F.3d at 1372-74.  Despite the fact that the method involved the use of numerous computers, the Federal Circuit found the claim not patent-eligible under 35 U.S.C. § 101 because the recitation of a computer was incidental, and the claim was essentially directed at "only the general approach of obtaining information about credit card transactions utilizing an Internet address and then using that information in some undefined manner to determine if the credit card transaction is invalid." *Id.* at 1376.  Indeed, the court recognized that the method could be "performed by human thought alone" and thus "embod[ies] the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *Id.* at 1373 (quoting *Benson*, 409 U.S. at 67).  The same is true of each of the claims of the four patents asserted here.

Similarly, the claims in *Dealertrack* were directed to a "computer-aided" method for implementing a loan clearinghouse broken down into a series of common-sense steps: (1)

-12-

"receiving data from one source"; (2) "selectively forwarding the data"; and (3) "forwarding reply data to the first source." *Dealertrack*, 674 F.3d at 1333.  The Federal Circuit held that the claims were not patent-eligible under § 101 despite the fact that the claims referred to a computer because those claims "are silent as to how a computer aids the method, or the significance of a computer to the performance of the method." *Id.*  The fact that a computer might act "as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations," was not enough to make the otherwise abstract claim patent-eligible because the computer does not "impose a meaningful limit on the scope of [the] claim." *Id*. (quotation and citation omitted).

The same was true in *Fort Props., Inc. v. Am. Master Lease LLC*, another case that is instructive here.  Like here, there were two sets of claims there.  The first set did not require the use of a computer and were held invalid.  The second set **did** require a computer to perform an additional step (generating deed shares), **and they were held invalid too**.  671 F.3d, 1317, 1323-24 (Fed. Cir. 2012).  The Federal Circuit ruled that the additional requirement did not change the fact that the claimed real estate investment tool was an unpatentable "abstract concept." *Id.* at 1322.  The Federal Circuit contrasted the claims there with those in *Ultramercial*, where the invention "require[d] intricate and complex computer programming" and "specific application to the Internet and a cybermarket environment." *Fort Props.*, 671 F.3d at 1323 (quoting *Ultramercial*, 657 F.3d at 1328).  "The addition of the computer to the claims was not merely insignificant post-solution activity; rather, the invention itself involved 'advances in computer technology,' and it was thus sufficient to qualify the claims for patent eligibility under § 101." *Id.*  Certified Measurement's claims are like the *Fort Props.* claims.  Unlike in *Ultramercial*,

they do not require intricate and complex computer programming.  The computer-related elements are insubstantial.

In all of these cases, the computing devices did not meaningfully limit the claims because: (1) the claimed methods "[did] not specify how the computer hardware and database are specially programmed to perform the steps claimed" where "the computer . . . [could] be programmed to perform very different tasks in very different ways" *Dealertrack*, 674 F.3d at 1333 (quotation and citation omitted); *cf. DDR Holdings, LLC v. Hotels.com LP*, 954 F. Supp.2d 509, 527 (E.D. Tex. 2013) (Gilstrap, J.) (evidence of patentable subject matter included "processor programmed in certain ways to serve a composite web page");  or (2) the claims fundamentally did not need a computer in the first place. *See CyberSource*, 654 F.3d at 1373. Stated simply, unpatentable ideas cannot be transformed into patentable inventions "by merely requiring a computer to perform the method."  *CyberSource*, 654 F.3d at 1376.  "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp*, 687 F.3d at 1278.

Here, the "computing device" limitation (present in all claims of the four patents) does not meaningfully limit the claims because it does not specify how the hardware or software engine should be programmed.  The claims call for "a computing device . . . [for] performing a cryptographic operation," alternatively, "a computing device . . . to perform a cryptographic operation."  None of the claims recite any software or structural limitations that narrow the "computing device" to something more specific than a general-purpose computer capable of performing encryption.

The specification makes clear that encryption operations can be, and historically have been, performed on computers.  Indeed, the specification states that encryption operations can be performed by "any hardware or software engine capable of performing cryptographic operations."  '751 Patent at 7:7-10.  And at the time that the patentees applied for their patent, the "software or hardware cryptographic algorithms [were already] well known to those skilled in the art."  ('751 Patent 6:60-63).  Here, then, the computing device is just an obvious mechanism for performing known encryption operations.  This is unquestionably insufficient for patent-eligibility in view of the precedents set forth by *Alice*, *Fort Props.*, *Dealertrack*, and *Cybersource*.

### E.       Reciting the Collection of Data Does Not Salvage the Claims

Similarly, the fact that some of the claims recite additional steps calling for compiling data or displaying results does not make such subject matter patent eligible.  Such steps are "well-understood, routine, conventional, . . . or obvious," and, therefore, do not make the claim patentable.  *Mayo*, 132 S. Ct. at 1298 (citing *Parker v. Flook*, 437 U.S. 584, 590 (1978)).  Certified Measurement's claims are directly analogous to those in *Flook*, where the Supreme Court held method claims patent-ineligible because, putting aside the abstract idea underlying the patent there (a mathematical formula for updating alarm values), the other claim elements there (involving chemical process, monitoring the process variables, and use of alarms) were all "well known."  *Flook*, 437 U.S. at 594.

The other claim elements here are unquestionably conventional.  The mentioned "sensor," "computing device" and "output device" are merely mechanisms for gathering and transmitting data.  They perform generic, "well-understood, routine, convention . . . or obvious" functions and thus do not add any meaningful limitation to the claims.  *See id.*  As the Federal Circuit has explained, "mere data-gathering steps" cannot make an otherwise patentable claim

patentable.  *Cyberphone Sys.*, 2014 WL 718153 at *2 ("[T]he idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent eligible"); *Cybersource*, 654 F.3d at 1370 ("We have held that mere data-gathering steps cannot make an otherwise nonstatutory claim statutory").

## V.  THE COMPLAINT IMPROPERLY PLEADS INDIRECT INFRINGEMENT

Defendants also move to dismiss plaintiff's claims of contributory or induced infringement for failure to plead a claim upon which relief can be granted pursuant to Fed. R. Civ. P 12(b)(6).  It is apparent that the plaintiff has no basis to make such allegations when plaintiff has not alleged pre-suit knowledge of the patents, but instead relies exclusively on the filing of the Complaint as the basis to establish knowledge.

In regard to both forms of indirect infringement, a plaintiff must allege knowledge of the patent-in-suit to establish the scienter required for indirect infringement.  *See generally Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (requiring knowledge of the patent-in-suit and that the defendant know that the induced acts constitute patent infringement); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (holding that holding that § 271(c) requires "a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing").  The question presented is whether the filing of a complaint may establish the requisite knowledge of the patents-in-suit for induced and contributory infringement.

This Court has very recently addressed this issue in *Babbage Holdings v. Activision Blizzard, Inc.*, 2014 WL 2115616 (E.D. Tex. May 15, 2014) (Gilstrap, J.).  In *Babbage Holdings*, the plaintiff alleged that the "Defendants . . . knew of the [patent in suit] at least as early as the filing of the original complaint."  *Id.* at *2.  There, as here, the plaintiff failed to allege pre-suit

knowledge of the patent in suit.  *Id.*  This Court found that this was insufficient to establish

knowledge:

> Taken literally, [plaintiff] takes the position that each Defendant,
> some located hundreds or thousands of miles away, must have
> sensed the existence of the '811 Patent the moment [plaintiff] filed
> the complaints against them.  This Court knows of no authority
> that provides for some form of constructive notice of the matters
> within a complaint effected simply by its filing in a U.S. District
> Court.

*Id.* at *2.  Accordingly, the Court granted the defendants' motion to dismiss.[3]

Other district courts have reached the same conclusion.  *See, e.g., Brandywine Comms.

Techs., LLC v. Casio Computer Co. Ltd.*, 912 F. Supp.2d 1338 (M.D. Fl. 2012) ("Global-Techn's

holding that knowledge is required for indirect infringement is only meaningful if such

knowledge is alleged prior to receipt of a complaint."); *Proxyconn, Inc. v. Microsoft Corp.*, No.

11-1681, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ("a complaint fails to state a claim for

indirect patent infringement where the only allegation that purports to establish the knowledge

element is the allegation that the complaint itself . . . establish the defendant's knowledge of the

patent"); *Xpoint Techs, Inc. v. Microsoft Corp.*, 730 F. Supp.2d 349, 357 (D. Del. 2010)

(dismissing claims of indirect infringement because "knowledge after filing of the present action

is not sufficient for pleading the requisite knowledge for indirect infringement")

Plaintiff in this case alleges that Defendants' "ha[ve] had knowledge of the [patents in

suit] at least as of the filing of [the May 4, 2014] Complaint."  *See* Compl. at ¶¶ 37, 43-44, 50,

56-57, 63, 69-70, 76, 82-83.  This is the same conclusory pleading that the Court found

insufficient in *Babbage*.  The Court should dismiss the claimsfor indirect infringement here too.

---

[3] In *Babbage*, the asserted patent expired a few days after filing.  Although this fact does not apply to the patents in the instant case, the principle—that filing of a complaint does not provide notice—is the same.

## VI.   IN THE ALTERNATIVE, THE COURT SHOULD ORDER A MORE DEFINITE STATEMENT FROM THE PLAINTIFF

Defendants alternatively request that Certified Measurement be required to provide a more definite statement pursuant to Fed.R.Civ.P. Rule 12(e).  Rule 12(e) states that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  As Defendants' motion to dismiss makes clear, this is a case which raises dispositive issues that can (and should) be decided now on the pleadings.  *See* Sec. IV.

Plaintiff's complaint, which asserts four patents, fails to identify any asserted claims. There are 174 claims in the '751 patent, 143 claims in the '648 patent, 45 claims in the '453 patent, and 25 claims in the '310 patent.  In all, there are 387 separate claims.  The burden should not be on Defendants (or on this Court) to guess which claims are in issue.  And, as explained above, it would be particularly difficult to do so in this case because none of the claims mention electric meters, or the networking of electric meters, which are the accused products. Here, Defendants have shown that the patents are directed to ineligible-patent subject matter and have done so through exemplary claims.   Requiring plaintiff to identify the specific claims that are infringed will focus the Court's consideration of the present motion to dismiss and will expedite the case in a just and economical manner.

Finally, in filing a complaint in federal court, an attorney is representing to the court that a reasonable inquiry has been made to insure that the factual allegations have evidentiary support.  Fed. R. Civ. P. 11(b)(3).  This Court has high expectations of a plaintiff's preparedness before it brings suit:

> The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun. Thus, the Court expects that [plaintiff] already has sufficient knowledge of facts that it can include in its

> complaint that would give [defendant] sufficient notice of the claims alleged
> against it.

*See i2 Technologies, Inc. v. Oracle Corp.*, 2010 WL 8669837 (E.D. Tex. 2010) (granting motion for more definite statement where, among other deficits, the complaint asserted eleven patents and failed to identify any asserted claims) (citations and quotations omitted).  Assuming plaintiff has properly investigated its claim before filing suit, there is no reason not to inform the Defendants of which patent claims are truly at issue.

## VII.    CONCLUSION

For the reasons set forth above, this Court should Grant Defendants' motion to dismiss because the four asserted patents are directed to an abstract idea.  Wasting the parties' time and resources in conducting discovery and claim construction will not change the fact that the patents are invalid.  The Court should grant Defendant's motion to dismiss on the separate ground that the plaintiff failed to sufficiently plead indirect infringement.  Alternatively, the Court should require the plaintiff to provide a more definite statement of the patent claims alleged to be infringed.

Dated:  July 7, 2014

Respectfully submitted,


 /s/ Ramsey M. Al-Salam
Ramsey M. Al-Salam, Bar No. 18822
Stevan R. Stark, Bar No. 39639
SStark@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099

ATTORNEYS FOR DEFENDANTS
CENTERPOINT ENERGY HOUSTON
ELECTRIC, LLC, AND ITRON, INC.