**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CERTIFIED MEASUREMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 2:14-cv-627-JRG-RSP |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| CENTERPOINT ENERGY HOUSTON | § | |
| ELECTRIC, LLC, and ITRON, INC. | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF CERTIFIED MEASUREMENT, LLC'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY,**
<u>**FOR A MORE DEFINITE STATEMENT**</u>

# TABLE OF CONTENTS

**Page**

I.   FACTUAL BACKGROUND ...........................................................................................3

II.  THE PATENTS-IN-SUIT ...........................................................................................4

III. ARGUMENT ...........................................................................................................5

   A.   Defendants' Motion under § 101 Should be Denied Because it is Both
        Meritless and Premature ..............................................................................5

        1.   Defendants' Motion under § 101 is Meritless Because all the
             Claims of the Patents-in-Suit Satisfy § 101 .....................................5

             a.   The Claims of the Patents-in-Suit are Not Directed to Laws
                  of Nature, Natural Phenomena, or Abstract Ideas ...........................5

             b.   The Claims of the Patents-in-Suit Satisfy the "Machine-or-
                  Transformation" Test ..................................................................10

                  i.    The Claims Require Machinery .........................................10

                  ii.   The Claims Transform Electronic Signals .........................13

             c.   None of the Claims of the Patents-in-Suit Can Be
                  Performed Solely by the Human Mind .........................................14

        2.   Defendants' Motion is Premature Because the Asserted Claims
             will be Properly Disclosed Pursuant to the Local Rules ...........................15

        3.   Defendants' Motion is Premature Because there are Factual
             Disputes Concerning the Claims of the Patents-in-Suit ...........................15

   B.   Certified Measurement's Complaint Adequately Pled Knowledge of the
        Patents-in-Suit for the Indirect Infringement Claims ...............................18

   C.   The Asserted Claims are Properly Disclosed in Accordance with this
        Court's Schedule and Local Patent Rules ...............................................20

IV.  CONCLUSION ......................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Advanced Software Design Corp. v. Fiserv, Inc.*,
  No. 4:07-cv-185-CDP, 2012 WL 1684495 (E.D. Mo. May 15, 2012) ............................11, 12

*Accenture Global Servs. v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ...........................................................................................7

*Alice Corp. v. CLS Bank Int'l*,
  13-298, 2014 WL 2765283 (U.S. June 19, 2014) .........................................................9, 10, 11

*Babbage Holdings LLC v. Activision Blizzard, Inc.*,
  No. 2:13-cv-750, 2014 WL 2115616 (E.D. Tex. May 15, 2014) ...........................................19

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ...........................................................................................................5

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  No. 6:12-cv-0674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) ...........................................17

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366, 1372 (Fed. Cir. 2011) ..................................................................................14

*DDR Holdings, LLC v. Hotels.com LP*,
  954 F. Supp. 2d 509 (E.D. Tex. 2013) .................................................................................12

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ...........................................................................................11

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ...........................................................................................................12

*DietGoal Innovations LLC, v. Tyson Foods, Inc.*,
  No. 2:12-cv-0338-JRK-RSP (Dkt. No. 59) (E.D. Tex. Mar. 25, 2013) ............................15, 16

*Ex Parte Rombach*,
  No. 2009-0028661, 2009 WL 465106 (B.P.A.I. Nov. 25, 2009) .................................9, 10, 11

*Fort Props., Inc. v. Am. Master Lease LLC*,
  671 F.3d 1317 (Fed. Cir. 2012) ...........................................................................................11

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ...........................................................................................................9

*i2 Technologies, Inc. v. Oracle Corp.*,
  No. 609-cv-194, 2010 WL 8669837 (E.D. Tex. Mar. 29, 2010) ...........................................20

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008)..................................................................10, 13, 16

*Inmotion Imagery Techs. v. Brain Damage Films*,
    No. 2:11-cv-414, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012)..........................18

*L.C. Eldridge Sales Co., LTD v. Azen Manufacturing, PTE., Ltd.*,
    6:11-cv-0599-MHS (Dkt. No. 106) (E.D. Tex. Sept. 27. 2012) ...........................21

*Lochner Techs., LLC v. AT Labs Inc.*,
    No. 2:11-cv-242, 2012 WL 2595288 (E.D. Tex. July 5, 2012) .............................19

*Macrosolve, Inc. v. Geico Ins. Agen. Inc.*,
    No. 6:12-cv-0074-MHS-JDL (Dkt. No. 52) (E.D. Tex. Feb. 5, 2013) ...................16

*Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*,
    476 F. Supp. 2d 1143 (N.D. Cal. 2007) .............................................................19

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
    No. 2:13-cv-3560, 2014 WL 585450 (C.D. Cal. Feb. 14, 2014) ...........................19

*Parker v. Flook*,
    437 U.S. 584 (1978)..........................................................................................9

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,
    No. 1:10-cv-1370, 2010 WL 4698576 (N.D. Ohio Nov. 12, 2010)........................16

*Rmail LTD v. Right Signature, LLC*,
    No. 2:11-cv-0300, 2012 WL 2595305 (E.D. Tex. July 5, 2012) ......................15, 20

*Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co.*,
    No. 2:13-cv-0894, 2014 WL 1998053 (E.D. Tex. May 15, 2014) .....................1, 5, 6, 7, 9, 16

*Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co.*,
    No. 2:13-cv-0900 (Dkt. No. 75) (E.D. Tex. Jul. 21, 2014).....................................1

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F.3d 1319 (Fed. Cir. 2010)......................................................................10, 14

*Soverain Software LLC v. Euromarket Designs, Inc.*,
    No. 6:12-cv-00145-LED (Dkt. No. 54) (E.D. Tex. Mar. 21, 2014)........................19

*St. Clair Intellectual Property v. Apple Inc.*,
    C.A. No. 10-0982, 2011 WL 4571812 (D. Del. Sept. 30, 2011) ......................20, 21

*Stoneeagle Servs., Inc. v. Davis*,
    No. 3:13-cv-0894 (Dkt. No. 15) (N.D. Tex. Aug. 14, 2013) ................................16

*Tierra Intelectual Borinquen, Inc. v. Asus Computer Int'l, Inc.*,
    No. 2:13-cv-0044, 2014 WL 1233040 (E.D. Tex. Mar. 21, 2014) ......................................3, 18

*TQP Dev., LLC v. Intuit Inc.*,
    No. 2:12-cv-0180-WCB-RSP, 2014 WL 651935 (E.D. Tex. Feb. 19, 2014)......................1, 13

*UbiComm, LLC v. Zappos IP, Inc.*,
    No. 13-1029, 2013 WL 6019203 (D. Del. Nov. 13, 2013)................................................17, 18

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013)...............................................................................5, 12, 16, 17

## STATUTES

35 U.S.C. § 101 .............................................................................................................................1

Defendants have raised three issues in their motion: (i) the patentability of the claims under 35 U.S.C. § 101, (ii) the propriety of pleading indirect infringement when the complaint itself provides notice of the patent, and (iii) whether plaintiff Certified Measurement, LLC ("Certified Measurement") should be required to provide a more definite statement of its claim at this juncture. We turn first to the patentability of the claims under section 101, which should be denied for at least three different reasons, and then turn to the remaining two issues.

An invention is not abstract if it "requires a physical act in the world." *Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co.*, No. 2:13-cv-0894, 2014 WL 1998053, at *4 (E.D. Tex. May 15, 2014) (Gilstrap, J.), *aff'd, Rockstar Consortium US LP, Inc. v. Samsung Electronics Co.*, No. 2:13-cv-0900 (Dkt. No. 75) (E.D. Tex. Jul. 21, 2014) (Gilstrap, J.). The patents-in-suit contain 34 independent apparatus claims and 16 independent method claims, and each and every one of the claims (including the two cited in Defendants' motion) require at least four such physical acts – namely, (1) generating or receiving a signal based on a physical measurement, (2) generating or receiving a signal representative of the time of acquisition of the physical measurement, (3) generating an augmented measurement based on the physical measurement and time signals, and (4) performing a cryptographic operation on the augmented measurement.[1] Furthermore, the inventions are clearly bounded through the use of machinery such as sensors, time generators (*e.g.*, clocks), and/or signal receivers (*e.g.*, GPS receivers). Further still, the claims require a special purpose computer (*e.g.*, a cryptoprocessor) which transforms the augmented measurement by performing a "cryptographic operation." *See, e.g., TQP Dev., LLC v. Intuit Inc.*, No. 2:12-cv-0180-WCB-RSP, 2014 WL 651935, at *5-7 (E.D.

---

[1] U.S. Patent No. 5,828,751 includes 24 independent apparatus claims and 3 independent method claims; U.S. Patent No. 6,282,648 includes 3 independent apparatus claims and 3 independent method claims; U.S. Patent No. 6,289,453 includes 5 independent apparatus claims (including one *Beauregard* claim) and 9 independent method claims; and U.S. Patent No. 8,549,310 includes 2 independent apparatus claims and 1 independent method claim.

Tex. Feb. 19, 2014) (holding that encryption is a transformation that qualifies as a patent-eligible invention).  Consequently, none of the claims is too abstract to be unpatentable under 35 U.S.C. § 101.

Defendants themselves note that there are 387 claims in the patents-in-suit, but fail to mention that the claims are directed to a variety of different features (*e.g.*, tamper resistant enclosure, corroborative datum, external timing signal, input device, etc.).  Defendants concede that they cannot show at this stage that all the claims of the patents-in-suit are not directed at patentable subject matter under § 101 without a claim by claim analysis.  *See* Motion at *7 ("By failing to identify any allegedly infringed claims in its Complaint, neither Defendants nor the Court can determine whether any of the asserted claims are directed to patentable subject matter.").  However, Defendants must show by clear and convincing evidence that each claim is not patentable under § 101.  By conceding that they cannot determine whether each claim is directed to patentable subject matter, Defendants necessarily cannot meet their burden.  Certified Measurement will identify the asserted claims pursuant to this Court's Schedule and the Local Patent Rules (*see* P.R. 3-1), and, to the extent Defendants still believe that any one of the 387 claims is not patentable subject matter, Certified Measurement's claim selection may nonetheless render that issue moot.

Finally, in relation to § 101, the question of patentable subject matter should be reserved until claim construction if there are disputed issues respecting the interpretation of the claims. Defendants misinterpret claim terms, improperly ignore the claim language, misapply legal principles, and ignore the patents' teachings.  Certified Measurement disagrees with Defendants' apparent interpretation of terms such as "sensor," "physical measurement," "computing device," and "cryptographic operation."  Defendants also improperly ignore key limitations in the claims–

*e.g.*, a second signal that is based in part on a "time," generating an "augmented measurement," and performing a "cryptographic operation" on the "augmented measurement." Accordingly, Defendants' § 101 motion should be denied.

Defendants' motion on indirect infringement fares no better. This Court has ruled "dispositively" that pre-suit knowledge of the patents is not required to plead indirect infringement since "[a] pre-suit knowledge requirement…would lead to absurd results." *Tierra Intelectual Borinquen, Inc. v. Asus Computer Int'l, Inc.*, No. 2:13-cv-0044, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 21, 2014) (Gilstrap, J). Defendants' motion ignores controlling authority from this Court and attempts to rely on a single case that is readily distinguishable because the patent there had expired and there was no post-filing claim to be pled. Certified Measurement's complaint has alleged sufficient knowledge of the patents-in-suit with respect to indirect infringement claims stemming from Defendants' activities after they acquired knowledge of the patents through the complaint. Accordingly, Defendants' motion should be denied.

Defendants' motion for a more definite statement should also be denied. A complaint does not need to identify the asserted claims. Instead, the asserted claims are properly disclosed pursuant to the Court's Schedule and the Local Patent Rules (*see* P.R. 3-1).

## I.    FACTUAL BACKGROUND

On May 5, 2014, Certified Measurement filed this case against Defendants CenterPoint Energy Houston Electric, LLC and Itron, Inc. (collectively "Defendants") for the infringement of four patents (D.I. 1), including U.S. Patent No. 5,828,751 ("the '751 Patent"), U.S. Patent No. 6,282,648 ("the '648 patent), U.S. Patent No. 6,289,453 ("the '453 patent"), and U.S. Patent No. 8,549,310 ("the '310 patent") (collectively, the "patents-in-suit"). On July 7, 2014, Defendants filed a motion to dismiss, or alternatively, for a more definite statement (D.I. 14) (the "Motion"). This is Certified Measurement's answering brief in opposition to that motion.

## II.    THE PATENTS-IN-SUIT

The patents-in-suit relate to a device and method of acquiring and certifying a physical measurement and its time of acquisition using cryptographic operations.  *See, e.g.* '751 patent, col. 3:53-58.[2]  As Defendants note, there are 387 claims, but as Defendants fail to note, the claims are directed to a variety of different features.

In its simplest form, the patents-in-suit disclose the use of a sensor for providing a "signal" representative of a physical measurement and a time generator (*e.g.*, clock) for providing a time of acquisition.  *See, e.g.,* col. 4:1-6.  Alternatively, a "signal receiver" (*e.g.*, GPS receiver) can be used to provide the time of acquisition.  *See, e.g.,* col. 4:43-49.  The inventions require producing an "augmented measurement," comprised of a physical measurement value and its time of acquisition, and subsequently performing a cryptographic operation on the augmented measurement.  *See, e.g.,* col. 7:66-8:5.  The measurement certification device can be enclosed within a tamper-resistant environment (*e.g.*, a secure enclosure) and the certified measurement can be outputted in a variety of formats, including using a transmitter for transmitting the certified measurement to a remote location.  *See, e.g.,* col. 5:12-22; 7:23-29.  Figure 1 of the '751 Patent illustrates an embodiment of the secure measurement acquisition and certification device.[3]

The augmented measurement can also include additional features that increase the confidence of the measurement taken—*e.g.*, a unique device ID, which identifies the device that produced the augmented measurement, or a signal providing a corroborative datum indicative of the operational condition of the device (*e.g.* a normal operation signal if the device's security measures are intact and functional).  *See, e.g.*, col. 6:12-17; 8:22-24.

---

[2] Unless provided otherwise, the specification of the '751 patent is cited throughout this brief.

[3] A Certificate of Correction was issued on October 31, 2000 to replace original Figure 1.

## III.   ARGUMENT

### A.   Defendants' Motion under § 101 Should be Denied Because it is Both Meritless and Premature

A patent's presumption of validity applies to a § 101 analysis.  *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1342 (Fed. Cir. 2013).  "[W]hen a patent issues, it does so after the Patent Office assesses and endorses its eligibility under § 101, just as it assesses and endorses its patentability under the other provisions of Title 35."  *Id.*  Accordingly, Defendants' section 101 challenge must be proven by clear and convincing evidence.  *Id.*  Defendants' motion to dismiss falls well short of this standard and should be denied.

#### 1.   Defendants' Motion under § 101 is Meritless Because all the Claims of the Patents-in-Suit Satisfy § 101

##### a.   <u>The Claims of the Patents-in-Suit are Not Directed to Laws of Nature, Natural Phenomena, or Abstract Ideas</u>

There are "three specific exceptions to § 101's broad patent-eligibility principles:  laws of nature, physical phenomena, and abstract ideas."[4]  *Bilski v. Kappos*, 561 U.S. 593, 801 (2010) (internal citations omitted).  "These exceptions, however, are to be construed narrowly, to avoid excluding 'unanticipated inventions' that might not be foreseen in the coverage language of § 101."  *Rockstar,* 2014 WL 1998053, at \*3 *(citing Ultramercial*, 722 F.3d at 1342)*.  "When assessing the abstract idea exception, the § 101 inquiry is a two-step one:  first, whether the claim involves an intangible abstract idea; and if so, whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine and specific application of that idea."  *Ultramercial*, 722 F.3d at 1349 n.2.

An invention is not abstract if it "requires a physical act in the world."  *Rockstar*, 2014 WL 1998053, at \*4.  In *Rockstar*, this Court held that "[a] method of notifying a user of an

---

[4] Defendants do not contend that the claims recite laws of nature or natural phenomena.

incoming communication event" was patent eligible because it was "inherently limited to the sphere of application rather than abstraction." *Id*. The Court held that because "'[a] method of notification' requires a physical act in the world—delivery of some form of notification to a user" and the claim limitations "bounded...the claimed process," the claim "d[id] not reach so far into abstraction as to be unpatentable." *Id*.

Here, like in *Rockstar*, each and every claim (including the two cited in Defendants' motion) requires at least four such physical acts – namely, (1) generating or receiving a signal based on a physical measurement, (2) generating or receiving a signal representative of the time of acquisition of the physical measurement, (3) generating an augmented measurement based on the physical measurement and time signals, and (4) performing a cryptographic operation on the augmented measurement.

By way of example, claim 136 of the '751 patent (col. 26:11-33) is reproduced below in its entirety:

136. A device for secure measurement acquisition and certification, comprising:

a sensor;

a time generator for transmitting a representation of a time;

a signal generator for providing a corroborative datum indicative of an operational condition of the device;

a computing device, including a computer processor and a memory, coupled to receive a measurement signal representative of a physical measurement from the sensor,

the representation of the time from the time generator and the corroborative datum from the signal generator, said computing device producing an augmented measurement including the measurement signal, the representation of the time and the corroborative datum, and performing a cryptographic operation on at least a portion of the augmented measurement to form a certifiable measurement; and

an output device, coupled to the computing device, for writing the certifiable measurement in response to a request for the certifiable measurement.

First, as in *Rockstar*, "[a] device for secure measurement acquisition and certification" is "inherently limited to the sphere of application rather than abstraction." *See Rockstar*, 2014 WL 1998053, at *4. Claim 136 specifically requires the physical acts of (1) taking a physical measurement using a "sensor" and generating a "measurement signal representative of [the] physical measurement," (2) generating "a representation of time" using a "time generator," (3) generating a "corroborative datum indicative of an operational condition of the device" using "a signal generator," (4) combining the physical measurement, time and corroborative datum signals to form an "augmented measurement," and (5) performing a "cryptographic operation" on the augmented measurement using a computing device. In fact, unlike prior art devices that were "directed to digital data certification," the purpose of the inventions of the patents-in-suit was "***physical*** measurement certification." *See, e.g.*, col. 3:4-6 (emphasis added).

Second, even a casual reading of the claims reveals that the inventions are properly bounded and far narrower than Defendants contend. According to Defendants, "the asserted patents attempt to preempt the field of modifying data generated by sensors" and "seek to preclude any technique for modifying data generated by a sensor." *See* Motion at *10. Defendants mischaracterize the inventions, wholly ignoring the claim language and stringing together portions of the specification to advance their incorrect arguments. *See Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("…the important inquiry for a § 101 analysis is to look to the claim."). Specifically, Defendants ignore key elements that limit each and every claim of the patents-in-suit—*e.g.*, a second signal based in part on a "time," generating "an augmented measurement," and performing a "cryptographic operation" on the "augmented measurement."

With regard to claim 136 of the '751 patent, the following elements clearly articulate a process that is meaningfully limited: "receiv[ing] a measurement signal representative of a physical measurement from the sensor"; "receiv[ing]…the representation of the time from the time generator"; "receiv[ing]…the corroborative datum from the signal generator" "indicative of an operational condition of the device"; "producing an augmented measurement including the measurement signal, the representation of the time and the corroborative datum"; "performing a cryptographic operation on at least a portion of the augmented measurement to form a certifiable measurement," and "output[ting]" the cryptographically assured measurement in response to a request for that measurement. *See* col. 26:11-33. Consequently, claim 136 of the '751 patent indisputably satisfies § 101.

Defendants specifically cite to claims 14 and 20 of the '310 patent as being directed to an abstract concept. *See* Defendants' Motion at *4-5. But these claims require receiving "a first signal" which is "based at least in part on a physical measurement" and receiving "a second signal" which is "based at least in part on a time." Properly construed, these claims are not abstract because the "first signal" is received from a physical sensor or signal receiver (*e.g*., GPS receiver) and the "second signal" is received from a time generator or signal receiver (*e.g.,* GPS receiver). *See, e.g.,* col. 4:1-6; 14:44-56. In addition, these claims also require generating an "augmented measurement" based on the physical measurement signal and the time signal, and performing a "cryptographic operation" on the augmented measurement.

Other claims of the patents-in-suit equally satisfy §101. For example, claim 155 of the '751 patent and claim 93 of the '648 patent, like claim 136 of the '751 patent, also requires a "sensor," "time generator," "measurement signal," and "signal generator." Other claims of the patents-in-suit additionally require "a transmitter" (*see, e.g.,* '648 patent, claim 37), a "secure

enclosure" (*see, e.g.*, '751 patent, claim 23), an "input device for receiving a request" (*see, e.g.*, '751 patent, claim 125) and/or a "global positioning system device" (*see, e.g.,* '453 patent, claim 10).

Defendants' argument that the patents-in-suit are abstract because different types of physical measurements can be measured misses the point as the invention is properly bounded by the claim elements. *See Rockstar*, 2014 WL 1998053, at *4; *Ex Parte Rombach*, No. 2009-0028661, 2009 WL 465106 (B.P.A.I. Nov. 25, 2009) (holding that "the claims are directed to a particular calibrating method for humidity sensors, and thus do not preempt the use of a mathematical algorithm in all fields or in any one field.") And, nonetheless, various claims are specifically directed at measuring specific physical parameters—*e.g.*, a location (*see, e.g.*, '453 patent, claim 2), a biometric measurement (*see, e.g.*, '453 patent, claim 2), or a chemical measurement (*see, e.g.*, '310 patent, claim 17).

Further, contrary to Defendants' characterization, this case is unlike *Gottschalk v. Benson*, 409 U.S. 63 (1972), *Parker v. Flook*, 437 U.S. 584 (1978), and *Alice Corp. v. CLS Bank Int'l*, 13-298, 2014 WL 2765283 (U.S. June 19, 2014). In *Benson,* the patent claimed an algorithm for performing binary conversions that could be performed without the use of any machinery and which had "no substantial practical application." 409 U.S. at 63, 71. Similarly, *Flook* held that a mathematical equation was not patentable. The invention in *Flook* consisted solely of applying a mathematical equation to calculate an alarm limit and granting the application "would in practical effect be a patent on the formula or mathematics itself." 437 U.S. at 587. Further, in *Alice*, the court held that claims that simply described the "concept of intermediated settlement (*i.e.* the use of a third party to mitigate settlement risk)" were patent ineligible because intermediated settlement is "a fundamental economic practice long prevalent

in our system of commerce." 2014 WL 2765283, at *8.  Here, the patents-in-suit do not claim a mathematical formula, algorithm, or longstanding economic practice.  And, as set forth below, the claims either explicitly or implicitly require machinery such as a "sensor," "time generator," "signal generator," "signal receiver," a special purpose "computing device," and/or "output device."  Accordingly, the claims of the patents-in-suit are not directed to an abstract idea.

      b.   The Claims of the Patents-in-Suit Satisfy the "Machine-or-Transformation" Test

Under the "machine-or-transformation test," a claimed process is patent eligible if it (1) is tied to a machine or apparatus; or (2) transforms a particular article into a different state or thing.  *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008).  The claims of the patents-in-suit satisfy both prongs of the machine-or-transformation test.

      *i.   The Claims Require Machinery*

A system passes the "machine" prong of the test where a machine "play[s] a significant part in permitting the claimed method to be performed."  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010).

In *SiRF Tech.,* the claims were directed to methods involving a "GPS receiver" or a "satellite signal receiver."  601 F.3d at 1331-32.  Finding that "[a] GPS receiver is a machine and is integral to each of the claims at issue," the Federal Circuit held the claims to be patent-eligible. *Id*.

Similarly, in *Ex Parte Rombach*, the Board of Patent Appeals and Interferences ("Board") applied the machine-or-transformation test to an invention that involved sensors.  *See* No. 2009-0028661, 2009 WL 465106 (B.P.A.I. Nov. 25, 2009).  The Board held that an invention directed at calibrating a sensor was patent-eligible because the claims either "explicitly" and/or "inherently require[d]" sensors, such as humidity and pressure sensors.  *Id*. at *4.  Claim 7 of the

*Rombach* invention provided "measuring a first pressure;" "measuring a first humidity value;" "measuring a second pressure;" "measuring a second humidity value;" "determining a correction value according to the first and second pressures and the first and second humidity values…;" and "maintaining the correction value to be applied to humidity measurements of the humidity sensor." *Id*. at *2. The Board noted that the values obtained from the sensors were "necessary" to calculating the correction value, and therefore, the invention was directed to statutory subject matter. *Id*. at *4.

Here, like in *SiRF Tech.* and *Rombach*, the claims recite machines, such as "sensors," "time generators" and/or "signal receivers," either explicitly (*e.g.,* '751 patent, claim 136) or inherently as part of the claim terms properly construed (*e.g.*, '310 patent, claims 14 and 20). The sensors, time generators, and/or signal receivers (*e.g.,* GPS receiver) are necessary to generate the "augmented measurement" and are not merely mechanisms to collect data.

Moreover, whereas Defendants cite to cases addressing general purpose computers, the claims of the patents-in-suit require a special purpose computer (*e.g.*, a cryptoprocessor) which is programmed to perform a particular function (*e.g.,* encryption). *See* Motion at *11-15.[5] In *Advanced Software Design Corp. v. Fiserv, Inc.*, the Court rejected a similar argument that a "data processing device" in the claims was a "general purpose computer." No. 4:07-cv-185-

---

[5] For example, in *Alice*, the claims "d[id] no more than require a generic computer to perform generic computer functions." 2014 WL 2765283, at *12 (U.S. June 19, 2014). Similarly, in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012), the claims included a general purpose computer and the Court held that the "claims are silent as to *how* a computer aids the method, *the extent* to which a computer aids the method, or the *significance* of a computer to the performance of the method." 674 F.3d at 1333 (emphases added). Further, in *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012*),* the Court held that "like the computer limitation in *Dealertrack*, [the computer in *Fort Props.*] does not 'play a significant part in permitting the claimed method to be performed.'" 671 F.3d at 1323 (internal citations omitted). Here, the claims require a special purpose computer which is programmed to perform a cryptographic operation. Moreover, unlike *Alice, Dealertrack,* and *Fort Props.*, the claims of the patents-in-suit are specifically tied to other machinery—e.g., sensors, time generators, and/or signal receivers. And, unlike *Alice, Dealertrack,* and *Fort Props*, the claims of the patents-in-suit are not abstract because they recite significant physical activity.

CDP, 2012 WL 1684495, at *6 (E.D. Mo. May 15, 2012) (citing *Ultramercial*, 657 F.3d at 1328-29). The Court held that the patent was subject matter eligible because the "'data processing device' must be programmed to perform the re-encryption or decryption function." *Id.*; *see also Ultramercial*, 657 F.3d at 1328-29 (holding that "programming creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform a particular function pursuant to instructions from program software."); *DDR Holdings, LLC v. Hotels.com LP*, 954 F. Supp. 2d 509, 527 (E.D. Tex. 2013) (Gilstrap, J.) (holding that the invention was patentable because, among others, the claims required a "processor programmed in certain ways to serve a composite web page.").

Here, as in *Advanced Software Design Corp.*, the "computing device" is a special purpose computer because it is programmed to perform a cryptographic function (*e.g.* encryption). *See e.g.,* '751 Patent, claim 136 ("a computing device, including a computer processor and a memory,…said computing device…performing a cryptographic operation."); '310 Patent, claim 14 ("performing, by the computing device using a cryptographic processor, a cryptographic operation…"); '751 Patent, claim 8 ("…wherein the cryptographic operation includes encryption with an encryption key."); *see also* col. 8:2-6.

Defendants also argue incorrectly that the patents-in-suit are patent ineligible because the "claim elements there….were all 'well known.'" Motion at *15. *But see Diamond v. Diehr*, 450 U.S. 175, 188-189 (1981) ("It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination

was made.") Here, as in *Diamond*, the inventions are directed to a new combination for acquiring and certifying a physical measurement.

Therefore, the patents-in-suit satisfy the "machine" prong of the machine-or-transformation test.

### ii. The Claims Transform Electronic Signals

Not only do the claims of the patents-in-suit satisfy the "machine" prong of the machine-or-transformation test, which by itself is sufficient for patent eligibility, they also meet the "transformation" prong because the claims require transforming an "electronic signal representative of…physical object[s]" by performing a cryptographic operation. *See In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc) (recognizing that "transformation of…an electronic signal representative of any physical object or substance" is patentable subject matter).

In *TQP Dev., LLC v. Intuit Inc*., the Court held that claims directed at a method of transmitting encrypted data was patentable subject matter because encryption involved a patent-eligible transformation. 2014 WL 651935, at *5-7. "In the case of an invention in the field of encryption…the entire object of the invention is to transform data from one form into another that will be recognizable by the intended recipient but secure against decryption by unintended recipients. In that setting, it does not make sense to say that the transformation of data from one form to another cannot qualify as a patent-eligible invention, because that is what the field of cryptology is all about." *Id*. at *5.

Here, the inventions require generating or receiving electronic signals corresponding to a physical measurement and a time, forming an augmented measurement and, as in *TQP Dev.*, transforming the measurements by performing a "cryptographic operation." Accordingly, the invention also satisfies the "transformation" prong of the machine-or-transformation test.

c. <u>None of the Claims of the Patents-in-Suit Can Be Performed Solely by the Human Mind</u>

Federal Circuit precedent establishes that a claim is not abstract when it cannot be performed entirely by the human mind. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *SiRF Tech.*, 601 F.3d at 1333. In *CyberSource*, the court held that the patented method recited an unpatentable mental process for collecting and organizing data because "all [the claim's] method steps can be performed in the human mind, or by the human mind using a pen and paper." *CyberSource*, 654 F.3d 1372. In reaching its decision, the Federal Circuit distinguished *CyberSource* from *SiRF Tech.*, where patentability was upheld because the claimed method could not be performed solely in the human mind. The Federal Circuit explained:

> [*CyberSource*] is entirely unlike cases where, as a practical matter, the use of a computer is required to perform the claimed method. For example, in *SiRF Tech.*, we found that claims to a "method for calculating an absolute position of a GPS receiver and an absolute time of reception of satellite signals" recited patent-eligible subject matter. 601 F.3d at 1331. The court noted that we were "not dealing with ... a method that [could] be performed without a machine" and that there was "no evidence . . . that the calculations [could] be performed entirely in the human mind." *Id.* at 1333. To the contrary, we found it was "clear that the methods at issue could not be performed without the use of a GPS receiver." *Id.* at 1332.

*CyberSource*, 654 F.3d at 1376.

Here, as in *SiRF Tech.*, the inventions cannot be performed by the human mind. For example, in Claim 136 of the '751 patent , an "augmented measurement" cannot be generated without a "sensor" which provides a "measurement signal representative of a physical measurement," a "time generator for transmitting a representation of a time," and "a signal generator for providing a corroborative datum indicative of an operational condition of the device." For example, Defendants do not (and cannot) explain how the human mind can sense a physical parameter and generate a signal representative of that physical parameter, generate a

14

signal representative of a time, generate a signal representative of the operational condition of a device, and form an "augmented measurement" comprised of these signals.

## 2. Defendants' Motion is Premature Because the Asserted Claims will be Properly Disclosed Pursuant to the Local Rules

As Defendants' note, there are 387 claims in the patents-in-suit, but as Defendants fail to mention, the claims are directed to a variety of different features. Defendants actually concede that they cannot show at this stage that all the claims of the patents-in-suit are not directed at patentable subject matter under § 101. *See* Motion at *7 ("By failing to identify any allegedly infringed claims in its Complaint, neither Defendants nor the Court can determine whether any of the asserted claims are directed to patentable subject matter.").

However, Defendants must show by clear and convincing evidence that each claim is not patentable under § 101. By conceding that they cannot determine whether each claim is directed to patentable subject matter, Defendants necessarily cannot meet their burden. Local Patent Rules prescribe a sequence of events including plaintiff's identification of the asserted claims. *See* P.R. 3-1; *cf. Rmail LTD v. Right Signature*, *LLC*, 2:11-cv-0300, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) (Gilstrap, J.). This sequence enables the parties to identify any disputes and present them to the Court in an orderly fashion. Certified Measurement will identify the asserted claims pursuant to this Court's Schedule and the Local Patent Rules (P.R. 3-1), and, to the extent Defendants still believe that any one of the 387 claims is not patentable subject matter, Certified Measurement's claim selection may nonetheless render that issue moot. Accordingly, Defendants' motion is premature.

## 3. Defendants' Motion is Premature Because there are Factual Disputes Concerning the Claims of the Patents-in-Suit

"[C]laim construction is an important first step in any § 101 analysis." *DietGoal Innovations LLC, v. Tyson Foods, Inc.*, No. 2:12-cv-0338-JRK-RSP (Dkt. No. 59) (E.D. Tex.

Mar. 25, 2013) (Gilstrap, J.) (denying motion to dismiss for failure to state a claim based on unpatentable subject matter); *see also In re Bilski*, 545 F.3d at 951. "If there are factual disputes about the patent's claims…***the question of patentable subject matter should be reserved until claim construction***." *Rockstar*, 2014 WL 1998053, at *3 (Gilstrap, J.) (citing *Ultramercial*, 722 F.3d at 1339) (emphasis added).

Other courts have reached the same conclusion. *See, e.g., Macrosolve, Inc. v. Geico Ins. Agen. Inc*., No. 6:12-cv-0074-MHS-JDL (Dkt. No. 52) (E.D. Tex. Feb. 5, 2013) ("Here, where the claims on patentability relate directly to the scope and meaning of a claim term, it is not only prudent, but necessary for the Court to conduct claim construction prior to determining the patentability of the subject matter under 35 U.S.C. § 101"); *Stoneeagle Servs., Inc. v. Davis*, No. 3:13-cv-0894 (Dkt. No. 15) (N.D. Tex. Aug. 14, 2013) ("[C]laim construction will sharpen these issues and offer more than two opposing takes on what the claims mean. A ruling based on briefing alone without evidence invites pure guesswork…As such, the Court exercises restraint over valor."); *Progressive Cas. Ins. Co. v. Safeco Ins. Co*., No. 1:10-cv-1370, 2010 WL 4698576, at *5 (N.D. Ohio Nov. 12, 2010) ("Because the record is inadequate, the Court will not address defendant's specific arguments as to whether the patent meets the machine-or-transformation test or claims an abstract idea. Accordingly, defendant's motion to dismiss must be denied.").

This Court has not construed the claims of the patents-in-suit. And when, as here, the parties have a clear disagreement on the claim language, the question of patentable subject matter should be reserved until after claim construction. *See Rockstar*, 2014 WL 1998053, at *3 (Gilstrap, J.) (citing *Ultramercial*, 722 F.3d at 1339). As explained above, Certified Measurement disagrees with Defendants' apparent interpretation of terms such as "sensor,"

"physical measurement," "computing device," and "cryptographic operation." Worse, Defendants improperly ignore key elements of the claims they seek to invalidate—*e.g.*, a "second signal…based at least in part on a time," generating "an augmented measurement based at least in part on the first signal and the second signal," and performing a "cryptographic operation on at least a portion of the augmented measurement." *See, e.g.,* claims 14 ('310 Patent, col. 19:18-29) and 20 ('310 patent, col. 20:8-20); Motion at *4-5.

Defendants' reliance on a handful of exception cases in support of their argument that patent eligibility should be addressed at the pleading stage is misplaced as those cases themselves make clear that "it is rare that a patent infringement case can be dismissed at the pleading stage for lack of patentable subject matter." *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029, 2013 WL 6019203, at * 6 (D. Del. Nov. 13, 2013) (citing *Ultramercial*, 722 F.3d at 1339). That is because "the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility" and because the "analysis under § 101…is rife with underlying factual issues [and]…requires a search for limitations in the claims that narrow or tie the claims to specific applications of an otherwise abstract concept." *Ultramercial*, 722 F.3d at 1338-39 (emphasis in original). For example, unlike this case, *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.* involved a ***single*** patent, a ***single*** independent method claim, and a ***single*** disputed claim term that was relevant to patent eligibility. 6:12-cv-0674, 2014 WL 923280 at *1-2 (E.D. Tex. Jan. 21, 2014). That case was also procedurally different because the §101 question arose in the context of a 12(c) motion—not a 12(b)(6) motion—and the parties had already exchanged claim constructions in preparation for a *Markman* hearing. *Id*. at *3-4. Similarly, *UbiComm, LLC v. Zappos IP, Inc.* also involved a ***single*** patent with a ***single*** independent method claim. 2013 WL 6019203 at *1 (D. Del. Nov. 13, 2013). Further, like in

*Clear with Computers*, in *UbiComm*, the plaintiff had also submitted proposed claim constructions and even stated that the case was "teed up for decision" without a claim construction order. *UbiComm*, 2013 WL 6019203 at *1, 7.

Defendants have failed to meet their burden and the parties dispute the meaning and scope of the claim terms. Accordingly, disposition of this issue should be reserved at least until after claim construction.

### B. Certified Measurement's Complaint Adequately Pled Knowledge of the Patents-in-Suit for the Indirect Infringement Claims.

This Court has issued a series of decisions that are directly on point, whereas the sole authority cited by Defendants is easily distinguishable. As stated by this Court in relation to contributory infringement:

> "This Court has already ruled **dispositively** on…the legal questions presented here…First, the Court has concluded that pre-suit knowledge is not required to successfully plead contributory infringement…A party whose product can only be used to infringe a patent is liable for contributory infringement as soon as it learns of the patent and its potential infringement, even if the product was not designed specifically for the purpose of infringement."

*Tierra Intelectual Borinquen, Inc. v. Asus Computer Int'l, Inc.*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 21, 2014) (Gilstrap, J) (emphasis added).

The Court has also addressed induced infringement the same way: "[a] pre-suit knowledge requirement for induced infringement would lead to absurd results. If pre-suit knowledge were required, companies would have carte blanche to induce infringement purposefully provided that they were unaware of the patent prior to suit." *Id.* *at 6; *see also Inmotion Imagery Techs. v. Brain Damage Films*, No. 2:11-cv-414, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012) (Gilstrap, J.) (denying motion to dismiss inducement claims because "there can be no dispute that Galaxy has actual notice of the…patent at least as of the time of the filing of this lawsuit.").

Other courts in this District and across the country follow this Court's reasoning that pre-suit knowledge is not required to plead indirect infringement. *See, e.g.*, *Soverain Software LLC v. Euromarket Designs, Inc*., No. 6:12-cv-00145-LED (Dkt. No. 54) (E.D. Tex. Mar. 21, 2014) (holding that "[f]ailure to allege pre-suit knowledge is not a basis to dismiss plaintiff's indirect infringement claims…Here, plaintiff alleged Defendants at least had knowledge of the patents-in-suit as of the filing of the original complaint."); *Lochner Techs., LLC v. AT Labs Inc*., No. 2:11-cv-242, 2012 WL 2595288, at *3 (E.D. Tex. July 5, 2012) (finding that knowledge of the patent existed at "the time of the filing of the Complaint" sufficient); *MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 2:13-cv-3560, 2014 WL 585450, at *4 (C.D. Cal. Feb. 14, 2014); *Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd*., 476 F. Supp. 2d 1143, 1158 (N.D. Cal. 2007).

Defendants ignore controlling authority from this Court and attempt to rely instead upon *Babbage Holdings LLC v. Activision Blizzard, Inc.,* No. 2:13-cv-750, 2014 WL 2115616 (E.D. Tex. May 15, 2014). In *Babbage*, the plaintiff was suing on a patent that had **expired** "clearly before summons was issued or any Defendant was officially served" and, given these facts, "Babbage's indirect infringement claims must fail for the lack…of Defendant's actual knowledge of the…patent **while it was still in force**." *Id*. at *2 (emphasis added). Defendants relegate this critical distinction to a footnote (*i.e.*, Motion at *17, n.3) suggesting that the principle is the same here. But, in *Babbage*, providing notice through the complaint was futile because there was no claim to state because the patent had already expired; here, as in *Tierra*, the patents-in-suit have not expired and Defendants do not contend otherwise.

Consequently, because Certified Measurement has adequately pled knowledge of the patents-in-suit with respect to its indirect infringement claims, Defendants motion should be denied.

**C. The Asserted Claims are Properly Disclosed in Accordance with this Court's Schedule and Local Patent Rules**

Rule 8 does not require a plaintiff to identify the asserted claims in the complaint. *See* Fed. R. Civ. P. 8; *Rmail LTD*, 2012 WL 2595305, at *2 ("The Court finds Plaintiff's Complaint sufficient to comply with Rule 8, and Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation. Accordingly…a more definite statement is not required under Federal Rule of Civil Procedure 12(e)"); *St. Clair Intellectual Property v. Apple Inc.*, C.A. No. 10-0982, 2011 WL 4571812, at *2, fn1 (D. Del. Sept. 30, 2011) (internal citations omitted) ("Next, RIM asserts that the Complaint fails to identify which of the 138 method and system claims of the asserted patents are allegedly infringed…This argument fails because a plaintiff is not required to specifically include each element of the asserted patent's claims or even identify which claims it is asserting.").

Instead, the asserted claims are properly disclosed pursuant to this Court's Schedule and the Local Patent Rules. *See* P.R. 3-1 ("Disclosure of Asserted Claims and Infringement Contentions."). Defendants' reliance on *i2 Technologies, Inc. v. Oracle Corp.*, No. 609-cv-194, 2010 WL 8669837 (E.D. Tex. Mar. 29, 2010), is misplaced. In *i2 Technologies*, the Court granted a motion for a more definite statement because that complaint, unlike the one here, did "not include any of the accused products or services, fail[ed] to identify which patents are directly infringed, and fail[ed] to identify any direct infringement that provides the basis for the indirect infringement claims." *Id.* at *1. The Court did not order the Plaintiff to identify the asserted claims, holding that "[t]he Court does not require in a complaint the specificity that P.R. 3-1 requires, as that would go far beyond Rule 8 and Form 18's requirements." *Id.* at *3.

Indeed, motions for a more definite statement are generally disfavored particularly where, as here, the information sought by the motion could be easily obtained by discovery or disclosed

by complying with local rules. *See, e.g., L.C. Eldridge Sales Co., LTD v. Azen Manufacturing, PTE., Ltd.*, 6:11-cv-0599-MHS, at *3 (Dkt. No. 106) (E.D. Tex. Sept. 27. 2012); *St. Clair Intellectual Property*, 2011 WL 4571812, at *2 ("Motions for a more definite statement are generally viewed with disfavor, particularly where the information sought by the motion could easily be obtained by discovery.") (internal citations omitted).  Accordingly, Defendants' motion for a more definite statement should be denied.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, or alternatively, for a more definite statement should be denied.

Dated:  July 24, 2014                              Respectfully submitted,

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone:  (903) 509-5000
Facsimile:  (903) 509-5092

James H. Shalek *(Pro Hac Vice)*
Fabio E. Tarud *(Pro Hac Vice)*
Jonathan M. Sharret (*Pro Hac Vice)*
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Plaintiff Certified Measurement, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 24th day of July, 2014.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth