**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CERTIFIED MEASUREMENT, LLC, | § § | |
| Plaintiff | § § | Civil Action No. 2:14-cv-627 |
| | § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, and ITRON, INC., | § § § § | |
| Defendants. | § | |

**DEFENDANTS' JOINT MOTION TO TRANSFER VENUE TO THE HOUSTON
DIVISION OF THE SOUTHERN DISTRICT OF TEXAS**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 1

    A.    All CenterPoint Employees and Documents Connected with the Accused Meters Are Located in Houston ............................................................... 2

    B.    Itron's Relevant Witnesses and Documents Are Located in Houston ................... 3

    C.    No Relevant Witnesses or Evidence Are Located in the Eastern District of Texas ............................................................................................... 4

III.  THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF TEXAS ............................................................................................... 4

    A.    Plaintiff Could Have Filed this Lawsuit in the Southern District of Texas ........... 5

        1.    The Private Interests Favor Transfer to the Southern District of Texas ............................................................................................... 6

            a.    The relative ease of access to sources of proof favors transfer ............................................................................................... 6

            b.    The compulsory process factor favors transfer .............................. 7

            c.    The cost of attendance for willing witnesses favors transfer ......... 8

            d.    No practical problems weigh against transfer ............................... 9

        2.    The Public Interests Favor Transfer to the Southern District of Texas ............................................................................................... 10

            a.    The administrative difficulties flowing from court congestion slightly favors transfer ............................................... 10

            b.    Interest in having localized disputes decided at home favors transfer ............................................................................................... 10

            c.    The court's familiarity with the law factor is neutral ................... 11

            d.    The conflict of laws factor is neutral ........................................... 11

IV.  CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

Page

**CASES**

*GeoTag, Inc. v. Aromatique, Inc.*,
No. 2:10- 570-JRG, 2013 WL 8349856 (E.D. Tex. Jan. 14, 2013) ..........................................4

*In re Genentech, Inc.*
566 F.3d 1338 (Fed. Cir. 2009) ...............................................................................6, 7, 8, 10

*In re Hoffmann-La Roche, Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ..........................................................................................10, 11

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009) .................................................................................................5, 8

*In re Toa Techs., Inc.*,
543 F. App'x 1006 (Fed. Cir. 2013) .........................................................................................10

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ..................................................................................................6

*In re Verizon Bus. Network Servs. Inc.*,
635 F.3d 559 (Fed. Cir. 2011) .....................................................................................................4

*In re Volkswagen AG ("Volkswagen I")*,
371 F.3d 201 (5th Cir. 2004) ..................................................................................................8, 10

*In re Volkswagen of Am., Inc. ("Volkswagen II")*,
545 F.3d 304 (5th Cir. 2008) ...............................................................................................4, 5, 6, 8

*Lindloff v. Schenectady Int'l*,
950 F.Supp. 183 (E.D. Tex. 1996) ...............................................................................................7

*MobileMedia Ideas LLC v. Res. In Motion Ltd.*,
No. 2:10-CV-00113-TJW (E.D. Tex. Aug. 30, 2011) ............................................................4, 6

*Optimum Power Solutions LLC v. Apple, Inc.*,
794 F. Supp. 2d 696 (E.D. Tex. 2011) ........................................................................................10

*Ultimate Pointer, LLC v. Nintendo Co., Ltd.*,
No. 6:11-CV-00496 (E.D. Tex. 2014) .........................................................................................5

**STATUTES**

28 U.S.C. § 1391(d) .........................................................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page**

28 U.S.C. § 1404(a) ...................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c)(1) ............................................................................................................7

**I.     INTRODUCTION**

Defendants CenterPoint Energy Houston Electric, LLC ("CenterPoint") and Itron, Inc. ("Itron") (collectively, "Defendants") request that the Court transfer this patent case to Houston, pursuant to 28 U.S.C. § 1404(a).  This district has no connection to the parties or the underlying dispute.  No party has offices in this district.  The plaintiff, Certified Measurement, LLC, is a Delaware corporation with its principal place of business in Stamford, Connecticut.  Conversely, defendant CenterPoint is based in Houston, approximately half a mile from the Federal courthouse.  Defendant Itron is based in Liberty Lake, Washington.

There are no material witnesses in this district and no events material to the dispute occurred here.  The accused products—electric meters and related systems sold by Itron to CenterPoint—are being used by CenterPoint in the Southern District of Texas.  All of the CenterPoint witnesses reside and work in the Houston area.  All of the CenterPoint documents and physical evidence are in the Southern District.  Houston is also more convenient for the Itron witnesses and even, presumably, for plaintiff's witnesses.

In light of these facts, and the controlling law, this case should be transferred to the United States District for the Southern District of Texas in Houston.  This motion is supported by the declarations of Kenneth Mercado, Senior Vice President for Electrical Operations for CenterPoint, and Michel Cadieux, Senior Vice President of Human Resources for Itron, filed herewith.  Messrs. Mercado and Cadieux confirm the relevant facts.  The Declaration of Ramsey Al-Salam is also submitted to authenticate documents relating to court congestion in the two districts.

**II.     BACKGROUND**

The four patents asserted in this case relate to the concept of taking a measurement of a physical parameter and cryptographically processing it.  (*See* Compl. at ECF No. 1, Exs. A-D.)

Although the patents never mention electric meters, Plaintiff accuses the defendants of infringing the patents by processing and transmitting data collected by electric meters. (Compl. ¶¶ 28-34.)

### A. All CenterPoint Employees and Documents Connected with the Accused Meters Are Located in Houston

CenterPoint is an electric transmission and distribution utility incorporated in Texas and headquartered in Houston, Texas. (Mercado Decl. ¶ 3.) It is a subsidiary of CenterPoint Energy, Inc., also headquartered in Houston, Texas. (*Id.* ¶ 4.) CenterPoint delivers electricity to consumers in and around the Houston metropolitan area. (*Id.* ¶ 9.) In the figure below, CenterPoint's service territory is shown in light blue and its service centers are shown in dark blue:



(*Id.*)

The accused Energy Insight system is used to send and receive information relating electric use between CenterPoint's customers and its service centers. (*Id.*) It is deployed almost exclusively in the Southern District of Texas, i.e., where CenterPoint's customers are. (*See id.*)

As the vast majority of CenterPoint's customers reside in the Southern District of Texas, CenterPoint's employees are based there too. Approximately 70% of CenterPoint employees work in Harris County. (*Id.* ¶ 5.) The remaining CenterPoint employees work in Galveston, Fort Bent and Brazoria counties. (*Id.*) Specific employees who are likely to have relevant information include Dale Tinnin and Susan Neel. (*Id.* ¶ 10.) Like the employees, CenterPoint's relevant documents are in Houston, because the development, marketing and sale of the accused system took place primarily in Houston. (*Id.* ¶¶ 10-11.)

**B.     Itron's Relevant Witnesses and Documents Are Located in Houston**

Itron is a leading technology and services company that, among other things, develops and sells electronic meters and equipment, and services relating to communications with those meters. (Cadieux Decl. ¶ 3.) Itron employs more than 8,000 people around the world and has approximately 8,000 customers. (*Id.*)

Itron is a Washington corporation with its headquarters in Liberty Lake, Washington. (*Id.* at ¶ 6.) Although Itron has offices in other states, it has no offices in Texas. (*Id.*) Itron's accused electric meters are manufactured in Oconee, South Carolina. (*Id.* ¶ 7.)

Of Itron's more than 8,000 employees, only about 22 reside in Texas. (*Id.* ¶ 8.) At least four of them work with CenterPoint in the Houston area. (*Id.*) Of the remaining employees, only about six reside in the Eastern District, and all of them in Collin and Denton counties in the Sherman Division. (*Id.*) No Itron employees reside in the Marshall Division. (*Id.*)

The Itron employees most knowledgeable regarding the accused meters and architecture reside and work in the Liberty Lake, Washington area, and the persons most knowledgeable regarding the design, development and functionality of the meters work in either Liberty Lake or Oconee area. (*Id.* ¶ 9.)

In terms of travel, Houston is much more convenient for Itron witnesses than Marshall. Also, in Houston, there is the opportunity for Itron witnesses to combine travel related to the litigation with meetings with CenterPoint.  (*Id.* ¶ 10.)  Itron employees have no apparent business reasons to be in Marshall.  (*Id.*)

**C.     No Relevant Witnesses or Evidence Are Located in the Eastern District of Texas**

To the best of Defendants' knowledge, there are no witnesses or evidence in this district. As mentioned, plaintiff appears to have no ties with the District.  None of the named inventors of the four asserted patents appear to reside in Texas.  Instead, they appear to reside in Connecticut (Jay S. Walker and James Borasch), and Illinois (Bruce Schneier).  (*See* ECF Nos. 1-1 to 1-4.)

### III.    THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF TEXAS

This case should have been filed in the Southern District of Texas.  The courts, including the Fifth and Federal Circuits, have increasingly held that a district court should transfer a case where the case has no material connection to the district.  *See In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559 (Fed. Cir. 2011) (granting petition for mandamus to transfer case from the Eastern District of Texas to the Northern District); *see also GeoTag, Inc. v. Aromatique, Inc.*, No. 2:10-570-JRG, 2013 WL 8349856 (E.D. Tex. Jan. 14, 2013) (transferring case from the Eastern District of Texas to the Northern District); *MobileMedia Ideas LLC v. Res. in Motion Ltd.*, No. 2:10-113-TJW-CE (E.D. Tex. Aug. 30, 2011) (same).

The transfer inquiry has two parts: whether the action could have been brought in the transferee court, *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 312 (5th Cir. 2008), and if so, whether transfer is appropriate for the "convenience of [the] parties and witnesses" and the "interest of justice," *id.* at 315 (internal quotation marks and citation omitted).  In determining whether transfer is appropriate, courts analyze both public and private

factors relating to the convenience of the parties and witnesses as well as the interests of particular venues in hearing the case. The private factors are:

(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witnesses;

(3) the cost of attendance for willing witnesses; and

(4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id.*; *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

The public factors are:

(1) the administrative difficulties flowing from court congestion;

(2) the local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1198. The plaintiff's choice of venue is not a factor in this analysis. *Ultimate Pointer, LLC v. Nintendo Co., Ltd.*, No. 6:11-496, at *8 (E.D. Tex. June 17, 2014) (citing *Volkswagen II*, 545 F.3d at 314-15).

**A.      Plaintiff Could Have Filed this Lawsuit in the Southern District of Texas**

For corporate entities, such as defendants, venue is proper in any district in which they are subject to personal jurisdiction. *See* 28 U.S.C. § 1391(d). There is no dispute that CenterPoint and Itron are subject to personal jurisdiction in the Southern District of Texas. Accordingly, plaintiff could have brought this suit in the Southern District.

### 1.     The Private Interests Favor Transfer to the Southern District of Texas

The private factors, and especially the most important factor—the location of the witnesses—weigh heavily in favor of transfer.

#### a.     The relative ease of access to sources of proof favors transfer

The relative ease of access to sources of proof favors transfer to the Southern District of Texas as none of the sources of proof relevant to this case are located in this district.  Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue.  *Volkswagen II*, 545 F.3d at 316.  Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008); *see also Volkswagen II*, 545 F.3d at 316.

In addition, the Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analysis in patent cases.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) ("In patent infringement cases the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (internal quotation marks and citation omitted).

In *MobileMedia*, this court found this factor weighed in favor of transfer because all of the defendant's documents and physical evidence were located in the Northern District of Texas, including "documents relevant to the structure, function, operation, licensing, manufacture, and sale of the accused products" and "samples of the accused devices," whereas, no documents relevant to the litigation were located in the Eastern District of Texas.  No. 2:10- 113, ECF No. 106 at *4.  The Court reasoned that the sources of proof would have to be transported an extra 150 miles if the case were to be maintained in the Eastern District of Texas.  *Id.*  These facts are

directly analogous to this case.  All of CenterPoint's key witnesses and documents are located in Houston.  (Mercado Decl. ¶¶ 10, 11.)  Among them are witnesses from CenterPoint's marketing and engineering groups, physical samples of the accused devices, and documents regarding the development, marketing, and sales of the accused system.  (*Id.* ¶¶ 9-11.)  CenterPoint's evidence would have to travel an additional 200 miles for trial if the case were kept here.  (Al-Salam Decl. ¶ 4.)

In contrast, plaintiff does not maintain a place of business in the State of Texas.  Thus, any documents which plaintiff will produce in this action could just as easily be produced from its principal place of business in Connecticut.  The presence of relevant evidence in the Southern District of Texas, and absence of evidence in this district, thus weighs in favor of transfer.

### b. The compulsory process factor favors transfer

The Federal Circuit has noted that where "a substantial number of witnesses [are] within the subpoena power of the [transferee] [d]istrict" and there is "no witnesses who can be compelled to appear in the Eastern District of Texas," "[t]he fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, *and not only slightly*."  *In re Genentech*, 566 F.3d at 1345 (emphasis added).  To the extent CenterPoint employees or former employees are material witnesses and will not appear voluntarily, their appearance can only be compelled through subpoena.  Because they are likely to live over 200 miles away, this court does not have the power to compel them to appear for trial.  *See* Fed. R. Civ. P. 45(c)(1).  The Southern District of Texas, in contrast, will have subpoena power over all persons in the Houston area.  This also supports transfer.  *See Lindloff v. Schenectady Int'l*, 950 F. Supp. 183, 185-86 (E.D. Tex. 1996) (holding that where the court would lack subpoena power over "any of Defendant's officers or employees who are outside the Eastern district and who might be

unwilling to appear at trial . . . [and] it does not appear that the [transferee] court will have this problem, this factor favors the transfer of th[e] case.").

### c. The cost of attendance for willing witnesses favors transfer

The convenience and cost of attendance for witnesses is an important factor in the transfer calculus. *In re Nintendo*, 589 F.3d at 1198-99 (citing *Genentech*, 566 F.3d at 1343). The Fifth Circuit follows the 100-mile rule which looks at the relative distance between the witnesses' residence or work and the existing and proposed venues. *Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (internal quotation marks and citation omitted). Additional distance from home means additional travel time, which increases the cost for meals and lodging, which further increases the time that fact witnesses must be away from their regular jobs. *Id.* Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 204 n.3 (5th Cir. 2004).

CenterPoint's employees are located in and around the Southern District of Texas. The Houston courthouse is located just 0.5 miles from CenterPoint headquarters. (Al-Salam Decl. ¶ 4.) It would be significantly more burdensome for these individuals to travel an additional 200 miles (or 3.5 hours by car) to the courthouse in Marshall than to drive two minutes to the courthouse in Houston. (*Id.*; Mercado Decl. ¶ 12.) This alone compels transfer. *See Volkswagen II*, 545 F.3d at 317 (convenience of witnesses favored transfer where witnesses would have to travel 155 miles from home to testify in existing venue). Further, trial in Houston, Texas, would permit CenterPoint employees to continue working at their headquarters during

trial, thus resulting in a significantly smaller disruption to CenterPoint's business than travel to Marshall. (Mercado Decl. ¶ 12.)

Meanwhile, the travel requirements for Itron witnesses based in Washington favors transfer. Because there are more direct flights to Houston, it is more convenient for travel from Oconee or Liberty Lake. (Al-Salam Decl. ¶ 4.)

While Defendants cannot predict which witnesses Certified Measurement may present at trial, an obvious witness is Dr. Bruce Schneier since he is a named inventor and because the Complaint holds him out to be "an internationally renowned cryptographer and security expert." (Compl. ¶ 26.) Dr. Schneider, like his co-inventors, does not reside in this district; he appears to maintain a residence in Oak Park, Illinois. Travel from Dr. Schneider's residence in the Northern District of Illinois to the Eastern District of Texas requires at least five hours in each direction, whereas travel to the Southern District of Texas can be completed in approximately two and half hours . (Al-Salam Decl. ¶ 4.) There are daily direct flights from the Chicago O'Hare Airport to and from the Intercontinental Airport in Houston and no direct flights to and from Marshall's local airport in Shreveport, Louisiana. (*Id.*) Accordingly, transferring this matter to the Southern District of Texas would result in a time savings even for at least one of plaintiff's witness.

### d. No practical problems weigh against transfer

There is little possibility of delay and/or prejudice if transfer is granted. Defendants filed a motion to dismiss on July 7, 2014. (ECF No. 14.) Briefing on the motion will not conclude until August 1, 2014. Nothing else has happened in this case in this District since Certified Measurement filed its complaint. Thus, the other practical problems factor is neutral.

2. **The Public Interests Favor Transfer to the Southern District of Texas**

The local interest factor strongly favors transfer, because Houston has the greatest interest in whether or to what extent CenterPoint Energy, a prominent utility in the Houston area, is infringing plaintiff's patents. Defendant Itron has no offices in Texas, much less in the Eastern District of Texas. Itron's biggest customer in Texas is CenterPoint. Accordingly, to the extent Itron engages in business activities in Texas, the district with the most connection to those activities is the Southern District of Texas. The remaining public interest factors are neutral.

a. **The administrative difficulties flowing from court congestion slightly favors transfer**

The first public factor concerns the speed with which a case can come to trial and be resolved. *In re Genentech*, 566 F.3d at 1347. The average time from filing to trial in the Eastern District and in the Southern District is roughly the same, 21.3 months and 21.1 months respectively. (Al-Salam Decl. ¶¶ 2-3, Exs. A-B.) The docket in this District however is notably more congested than the docket in the Southern District of Texas. In March 2014, this District had 8 judges and 707 pending cases per judge, whereas the Southern District had 19 judges and 601 pending cases per judge. (*Id.*)

b. **Interest in having localized disputes decided at home favors transfer**

The next public factor, the local interest in having localized interests decided at home, strongly favors transfer. "The Fifth Circuit has explained that '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011) (quoting *Volkswagen I*, 371 F.3d at 206.)

Although Itron's electric meters are sold nationwide, including in this district, that cannot justify venue in the Eastern District of Texas as matter of law. *See In re Toa Techs., Inc.*, 543 F.

App'x 1006, 1009 (Fed. Cir. 2013) ("The sale of an accused product nationwide does not give rise to a substantial interest in any single venue.") (quoting *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

Because CenterPoint is headquartered in Houston, and because the accused Energy InSight system with the Itron OpenWay meters is deployed there, the Southern District of Texas has a strong localized interest in this action that the Eastern District does not. In particular, this lawsuit "calls into question the work and reputation" of CenterPoint's employees that work in the Southern District. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336 ("the [transferee venue's] local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."). The same cannot be said of anyone in this District.

           **c.**        **The court's familiarity with the law factor is neutral**

Neither the Eastern District of Texas nor the Southern District of Texas present any particular advantage or disadvantage with regard to familiarity with the federal patent law that governs the case. This factor is therefore neutral.

           **d.**        **The conflict of laws factor is neutral**

Neither district has any particular advantage with regard to conflict of laws. This factor is therefore neutral.

## IV.    CONCLUSION

For the foregoing reasons, the balance of the private and public factors demonstrates that the Southern District of Texas is clearly more convenient than the Eastern District of Texas for this litigation, and Defendants jointly request the Court grant this Motion to Transfer.

Dated:  July 28, 2014                                    Respectfully submitted,

                                                        */s/ Ramsey M. Al-Salam*
                                                        Ramsey M. Al-Salam, Bar No. 18822
                                                        RAlSalam@perkinscoie.com
                                                        Stevan R. Stark, Bar No. 39639
                                                        SStark@perkinscoie.com
                                                        Perkins Coie LLP
                                                        1201 Third Avenue, Suite 4900
                                                        Seattle, WA  98101-3099
                                                        206-359-6385/Fax 206-359-7385

                                                        ATTORNEYS FOR DEFENDANT
                                                        CENTERPOINT ENERGY HOUSTON
                                                        ELECTRIC, LLC, AND ITRON, INC.

-12-

## CERTIFICATE OF CONFERENCE

I am counsel for Defendant CenterPoint Energy Houston Electric, LLC and Itron, Inc. Pursuant to Local Rule CV-7(h), I met and conferred with counsel for Plaintiff, on July 20 and 22, 2014, regarding the instant Motion to Transfer. Counsel discussed the motion. I requested that Plaintiff consider whether it would agree to transferring this case to the Southern District of Texas, but counsel for Plaintiff did not agree and indicated that any motion to transfer would be opposed. The parties have reached an impasse on this motion to transfer, and motion practice is necessary to resolve this dispute.

/s/ *Ramsey M. Al-Salam*
Ramsey M. Al-Salam

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 28, 2014. All other counsel of record will be served via facsimile or electronic mail pursuant to Local Rule CV-5(d).

/s/ *Ramsey M. Al-Salam*
Ramsey M. Al-Salam