# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| CERTIFIED MEASUREMENT, LLC, § <br> § <br> Plaintiff § <br> § <br> v. § <br> § <br> CENTERPOINT ENERGY HOUSTON § <br> ELECTRIC, LLC, and ITRON, INC., § <br> § <br> Defendants. § | Civil Action No. 2:14-cv-627 |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, OR ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT

## TABLE OF CONTENTS

|     |     |     | Page |
| --- | --- | --- | --- |
| I.   | INTRODUCTION | | 1 |
| II.  | DEFENDANTS' MOTION SHOULD BE GRANTED | | 1 |
|      | A. | The Asserted Claims Are Directed to Abstract Ideas and Lack Meaningful Limitation to a Specific Application/Inventive Concept | 1 |
|      |    | 1. The Asserted Claims Fail the Machine-or-Transformation Test, Indicating that the Method Claims Are Directed to Unpatentable Subject Matter | 6 |
|      |    |     a. The patent claims are not tied to a particular machine | 6 |
|      |    |     b. The patent claims do not transform an article | 8 |
|      |    | 2. The Apparatus and Method Claims Are Functionally Equivalent | 9 |
|      | B. | Resolution of the § 101 Issue Is Proper at this Stage of the Case | 9 |
|      | C. | A More Definite Statement Will Narrow The Issues Without Prejudicing Plaintiff | 10 |
| III. | CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 2871 (2014) ...................................4

*Advanced Software Design Corp. v. Fiserv, Inc.*,
  No. 4:07cv185-CDP, 2012 WL 1684495 (E.D. Mo. May 15, 2012) ...................................6, 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
  134 S. Ct. 2347 (2014) ...............................................................................................3, 4, 5, 8

*Bancorp Servs. LLC v. Sun Life Assurance Co. of Can.*,
  687 F.3d 1266 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 2870 (2014) .................................8, 9

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010) ..........................................................................................................5, 8

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*,
  12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014) .......................................................2

*Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*,
  Nos. 11-2501 (MAS)(TJB), 12-9690 (MAS)(TJB), 2013 WL 3964909 (D.N.J.
  July 31, 2013) ............................................................................................................................9

*Cyberfone Sys. LLC v. Cellco P'ship*,
  885 F. Supp. 2d 710 (D. Del. 2012) ........................................................................................9

*Cybersource Corp. v. Retail Decisions, Inc.*,
  654 F. 3d 1336 (Fed. Cir. 2011) ..............................................................................................7

*Digitech Image Techs., LLC v. Sigma Corp.*,
  2013 WL 3947137 (C.D. Cal. July 31, 2013), *aff'd*, 2014 WL 3377201 (Fed.
  Cir. July 11, 2014) ....................................................................................................................4

*Ex Parte Rombach*,
  2009-002861, 2009 WL 4695106 (B.P.A.I. Nov. 25, 2009) ....................................................7

*Fort Props., Inc. v. Am. Master Lease, LLC*,
  671 F.3d 1317 (Fed. Cir. 2012) ................................................................................................1

*Fuzzysharp Techs., Inc. v. Intel Corp.*,
  No. 12-CV-4413-YGR, 2013 WL 5955668 (N.D. Cal. Nov. 6, 2013) .....................................4

*Glory Licensing LLC v. Toys R US, Inc.*,
  09-4252, 2011 WL 1870591 (D.N.J. May 16, 2011) ...............................................................6

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) .......................................................................................................... 7

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) ......................................................................................... 6

*Internet Patents Corp. v. Gen. Auto. Ins. Servs., Inc.*,
   12-5036, 2013 WL 7936688 (N.D. Cal. Sept. 28, 2013) ................................................ 1

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
   984 F. Supp. 2d 189 (S.D.N.Y. 2013) .................................................................. 6, 9, 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) .................................................................................................... 2

*Parker v. Flook*,
   437 U.S. 584 (1978) ........................................................................................................ 2

*Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co.*,
   Nos. 2:13-CV-00894-JRG, 2:13-CV-00900 JRG, 2014 WL 1998053 (E.D.
   Tex. May 15, 2014) ........................................................................................................ 2

*SirF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ....................................................................................... 7

*TQP Dev. LLC v. Intuit Inc.*,
   No. 2:12-VC-180-WCB, 2014 WL 651935 (E.D. Tex. Feb. 19, 2014) ...................... 6, 8

*Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc.*,
   No. 6:12-cv-375, 2013 WL 7393173 (E.D. Tex. Mar. 27, 2013) ................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ................................................................................................................ 10

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 10

## I. INTRODUCTION

Defendants seek to dismiss the Complaint or, in the alternative, for a more definite statement. The threshold question proposed by Defendants' motion is whether the claims of the asserted patents are directed to patent eligible subject matter. Rather than addressing the arguments and precedents raised by Defendants, Plaintiff parrots sound bites from a few select cases, but, tellingly, ignores the principles and holdings of those cases.

Plaintiff argues, for example, that the claims are not abstract ideas because they require a physical act. The Supreme Court has made clear, however, that a physical act alone does not confer patentability. Plaintiff also argues that its claims pass the machine-or-transformation test because they (1) recite using a computer, sensor, receiver and generator and (2) transform electronic signals. The generic recitation of computer hardware does not, however, satisfy the "machine" prong, because the claims are not directed to an improved or specific type of device. Finally, the Federal Circuit has clearly held that the simple "manipulation or reorganization of data" does not satisfy the "transformation" prong.

## II. DEFENDANTS' MOTION SHOULD BE GRANTED

### A. The Asserted Claims Are Directed to Abstract Ideas and Lack Meaningful Limitation to a Specific Application/Inventive Concept

The asserted claims cover the abstract concept of measuring *any* physical property, and then "augmenting" the resulting data with a time stamp and/or other data that can "certify" the measurement. Plaintiff spends several pages of its opposition pointing to claim limitations that involve "physical acts." Opp. at 5-10. The case law is clear, however, that "[a]n abstract concept cannot be transformed into patentable subject matter merely because of connections to the physical world." *Internet Patents Corp. v. Gen. Auto. Ins. Servs., Inc.*, 12-5036, 2013 WL 7936688, at *3 (N.D. Cal. Sept. 28, 2013) (quoting *Fort Props., Inc. v. Am. Master Lease, LLC*,

671 F.3d 1317, 1322 (Fed. Cir. 2012)). The Supreme Court has expressly found claims relating to measuring temperature and other processes are patent ineligible. *See Parker v. Flook*, 437 U.S. 584 (1978) (claims relating to determining the present value of a process variable, such as temperature, and changing the alarm-limit value related to the measurement, were directed to ineligible subject matter); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) (claims for administering drugs held not patent eligible); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, 12-205-RGA, 2014 WL 3542055, at *5 (D. Del. July 16, 2014) ("[E]ven if the patent requires some physical steps . . . that alone will also not confer patentability") (internal quotations and citation omitted).

In arguing to the contrary, Plaintiff asserts that this Court has held that "an invention is not abstract 'if it requires a physical act in the world.'" Opp. at 5 (quoting Court's decision in *Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co.*, Nos. 2:13-CV-00894-JRG, 2:13-CV-00900 JRG, 2014 WL 1998053, at *4 (E.D. Tex. May 15, 2014)). The Court did not hold so broadly. Although the Court found that "deliver[ing] some form of notification to a user" was a physical act, the analysis did not end there. *Id.*, at *4. The Court found the claim to be patent eligible because it claimed a process "more limited than simply 'notifying a user.'" *Id.* Indeed, the Court stated that just "sending the user the selected notification . . . might be said (in the absence of interpretive context) to be inherent in the abstract idea of communication." 2014 WL 1998053, at *4. In *Rockstar*, there were additional recited steps that meaningfully limited the process to a concrete application of the abstract idea of communication. In contrast, the claims of the asserted patents are not limited to any concrete applications, or at least any concrete applications that are even plausibly applicable to Defendants' activities.[1]

---

[1] Plaintiff refuses to identify which of the 378 claims in the patents are allegedly infringed. On the other hand, in an attempt to argue that the claims are not overbroad, it refers to claim language that clearly cannot be asserted against

Plaintiff also argues that "the claims either explicitly or implicitly require machinery such as a "sensor," "time generator," "signal generator," "computing device," and output device" (*see* Opp. at 18) and thus "cannot be performed entirely by the human mind" (*id.* at 19.) The Supreme Court's ruling in *Alice* disposes of this argument. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347, 2357 (2014). In *Alice*, the petitioner argued that its claims to a method for mitigating settlement risk were patent eligible because each step required a computer. The Supreme Court squarely rejected that argument, explaining that "the relevant question is whether the claims . . . do no more than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer." *Id.* at 2359. The claim in *Alice* recited the following:

> (1) creating shadow records for each counterparty to a transaction;
> (2) obtaining start-of-day balances based on the parties' real world accounts at exchange institution; (3) adjusting the shadow records as the transactions are entered, allowing only those transactions for which the parties have sufficient resources; and (4) issuing irrevocable end-of-day instructions to exchange institutions to carry out the permitted transactions.

*Id.* (as summarized by the Court). Analyzing each element of the claim, the Court held that "the function performed by the computer at each step of the process is '[p]urely conventional,'" and thus could not qualify as an "inventive concept." *Id*. at 2359, 2350. Using a computer "to create and maintain 'shadow accounts'" is commensurate with "electronic recordkeeping—one of the most basic functions of a computer;" likewise, "use of a computer to obtain data, adjust account balances and issue automated instructions" amounts to "well-understood, routine, conventional activit[ies]" previously known to the industry." *Id.* at 2359. Accordingly, "each step does no more than require a generic computer to perform generic computer functions." *Id.* The Court

---

Defendants. *See* Opp. at 9 (relying on claims relating to a "biometric measurement" or a "chemical measurement," neither of which can apply to Defendants, who are accused of infringing based on electric meters).

then considered the computerized steps as an "ordered combination," and held that the claims as a whole "add nothing . . . that is not already present when the steps are considered separately." *Id.*

There is no meaningful distinction between the *Alice* method claim and the method claims in this case. Method claim 20 of the '310 patent recites:

> (1) receiving, . . . , a first signal that is based at least in part on a physical measurement; (2) receiving, . . . , a second signal that is based at least in part on a time; (3) generating, . . . an augmented measurement based at least in part on the first signal and the second signal; and (4) performing, . . . , a cryptographic operation on at least a portion of the augmented measurement to generate a certifiable measurement.

'310 Patent at 20:8-20 (where ". . ." refers to the computing device). The function performed by the computing device at each of the four steps is purely conventional. Steps 1 and 2 involve receiving information, which is one of the most basic functions of a generic computer, regardless of where the data comes from. *See, e.g.*, *Fuzzysharp Techs., Inc. v. Intel Corp.*, No. 12-CV-4413-YGR, 2013 WL 5955668, at * 12 (N.D. Cal. Nov. 6, 2013) (noting that the function of storing data is "essentially synonymous with the term computer") (quotations omitted). Further, a time-signal is inherent to all computers. Steps 3 and 4 also amount to conventional computer tasks: manipulating data and making computations based on data. *See, e.g.*, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013) (computerized aspects of a claim directed to "generating tasks to be performed in an insurance organization," including a "data component that stores, retrieves and manipulates data," are insufficient to transform abstract idea into a concrete application of that idea), cert. denied, 134 S. Ct. 2871 (2014); *see also Digitech Image Techs., LLC v. Sigma Corp.*, 2013 WL 3947137, at *6 (C.D. Cal. July 31, 2013) (computerized aspects of method claim directed to "generating data . . . and combining the first and second data into a device profile" insufficient to transform

abstract idea into concrete application of that idea), aff'd, 2014 WL 3377201 (Fed. Cir. July 11, 2014).

The reasoning in *Alice* is applies here. The claims of the asserted patents do no more than "simply instruct the practitioner to implement the abstract idea . . . on a generic computer." In essence, the practitioner is instructed to take any physical measure, add a time-stamp, and then modify it in some other way. The claims do not recite an improved sensor, an improved clock, an improved transmitter, or any other improved device. Using generic devices, such as a computer, clock or sensor, for their conventional purposes is insufficient to convert an abstract idea, such as certifying physical measurements, into a patent-eligible application.

Plaintiff also argues that the claimed methods cannot be performed entirely by the human mind. Opp. at 14. More specifically, Plaintiff argues that the claims require a sensor and some means to track time and "augment" the sensor measurement. *Id.* at 14-15. This argument is, at best, misleading. The patents are directed to an abstract method that any human can perform. A "sensor" is just "a device that detects or measures a physical property and records, indicates or otherwise responds to it" (Google.com definition). A human being is perfectly capable of sensing a physical parameter, and then reporting the information based on time and some other modification to make it verifiable. Reciting a generic sensor is no different than reciting a general purpose computer.

### 1. The Asserted Claims Fail the Machine-or-Transformation Test, Indicating that the Method Claims Are Directed to Unpatentable Subject Matter

The machine-or-transformation test is an alternative tool for considering whether a method claim presents patentable subject matter. *Bilski v. Kappos*, 130 S. Ct. 3218, 3237 (2010). The test is not satisfied by the claims at issue herein.

### a. The patent claims are not tied to a particular machine

Plaintiff contends that the claims satisfy the machine-prong of the machine-or-transformation test because the claims use (1) a "computing device" programmed to perform encryption and (2) "sensors," "time generators" and "signal receivers." But in order to satisfy this prong of the test, the claims must be "tied to a particular machine or apparatus," "must impose meaningful limits on the claim's scope" and must "not merely be insignificant extra-solution activity." *In re Bilski*, 545 F.3d 943, 954 and 961-62 (Fed. Cir. 2008) (citations omitted).

The case law is clear that simply reciting a programmed computer is not sufficient to satisfy the "particular machine or apparatus test." *See Glory Licensing LLC v. Toys R US, Inc.*, 09-4252, 2011 WL 1870591 at *2 (D.N.J. May 16, 2011); *see also Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 202 (S.D.N.Y. 2013) ("Merely directing a computer to perform a function does not transform the computer into a specialized computer."). As one example from the asserted patents, Claim 20 of the '310 patent recites a "computing device using a cryptographic processor," but it recites no structural limitations that narrow the computing device to something more specific than a general purpose computer, and there are no specific operations performed in the claims that would structurally define the computing device. The cases cited by Plaintiff stand for the proposition that a claim directed at a *particularized* or *novel* method of encryption may be patent eligible. *See, e.g.*, *TQP Dev. LLC v. Intuit Inc.*, No. 2:12-VC-180-WCB, 2014 WL 651935 (E.D. Tex. Feb. 19, 2014); *Advanced Software Design Corp. v. Fiserv, Inc.*, No. 4:07cv185-CDP, 2012 WL 1684495, at *6 (E.D. Mo. May 15, 2012). The principle does not apply. The asserted patents only call for performing "cryptographic algorithms well known to those skilled in the art" using "any hardware or software engine capable of performing [those] operations," and do not offer anything new to the art of

cryptography. '751 Patent at 6:60-63, 7:7-10. The Supreme Court held that similar claims were invalid under § 101 in *Gottschalk v. Benson*, 409 U.S. 63, 65 (1972). *Benson* involved a computer programmed to carry out "ordinary arithmetic steps" to convert signals from decimal to binary form. *Id*. at 67. The claims were found unpatentable because the steps could be performed on "existing computers long in use, no new machine being necessary." *Id.* The same analysis applies to the claims asserted here. They stand in stark contrast to the encryption method in *Advanced Software*, which was related to a specific method of encryption, and required a machine readable control code (e.g. a bar code) and complex programming. 2012 WL 1684495, at *6.

Moreover, the use of sensors, time-generators and receivers, alone, does not render any patent claim valid. Plaintiff appears to argue that because sensors and receivers were patent eligible in *Ex Parte Rombach*, 2009-002861, 2009 WL 4695106 (B.P.A.I. Nov. 25, 2009), and *SirF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010), the claims of the asserted patents are valid *per se* because they too use sensors and receivers. Opp. at 10-11. Plaintiff's logic is flawed. In *Rombach*, the Board determined that the claims were directed to patent eligible subject matter because they improved a particular calibrating method for sensors that measured humidity and pressure. 2009 WL 4695106, at *4. Similarly, in *SirF*, the Court observed that the claims were directed to a "novel method of performing signal correlation" that improved conventional GPS technology and could "exist only with respect to a *particular* GPS receiver." 601 F.3d at 1323, 1332. These cases are inapposite to this case because the present claims do not purport to identify any new or improved machine.

    **b.**  **The patent claims do not transform an article**

"[M]ere manipulation or reorganization of data . . . does not satisfy the transformation prong" of the machine-or-transformation test. *Cybersource Corp. v. Retail Decisions, Inc.*, 654

F. 3d 1336, 1375 (Fed. Cir. 2011); *see also Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc.*, No. 6:12-cv-375, 2013 WL 7393173 at *3 (E.D. Tex. Mar. 27, 2013) (holding that steps of converting number into different format, performing an arithmetic operation, and converting the result back was merely manipulating data).

The *TQP* case, which Plaintiff cites, does not compel a different result. In *TQP*, the Court found that the encryption invention did *not* satisfy the transformation-prong. 2014 WL 651935 at *5,*7 ("transforming data from one form to another does not qualify as the kind of transformation that the Supreme Court in *Bilski* regarded as an important indicator of patent eligibility" and that the invention "d[id] not result in the physical transformation of matter."). The claim was found to be patentable on different grounds. Specifically, the Court determined that the claim was "drawn to a very specific method of changing encryption keys," and "contain[ed] several important limitations" that "narrow[ed] the claim relative to the fundamental principle [of data encryption]." *See id.* at *3-4 (listing limitations). These principles do not apply in the current case, because there is no claim of an improved form of encryption or data manipulation.

### 2. The Apparatus and Method Claims Are Functionally Equivalent

The system claims are no different from the method claims in substance and thus they too are patent ineligible under § 101. *See Alice*, 134 S. Ct. at 2360-61. Claim 14 of the '310 Patent adds an apparatus consisting of a input device and a processor. *See* ECF No. 14, at 5. System claim 14 and method claim 20 are, otherwise, functionally identical. *See id.* Because "[t]he only difference between the claims is the form in which they were drafted," they must be treated as equivalent for purposes of the § 101 analysis. *See Bancorp Servs. LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (affirming decision to treat similarly worded system and method claims at issue as equivalent in the § 101 analysis), *cert. denied*, 134 S. Ct.

2870 (2014). Thus, the system claims of the asserted patents are not directed to patent eligible subject matter for the same reasons as the method claims.

**B.      Resolution of the § 101 Issue Is Proper at this Stage of the Case**

Plaintiff requests that the Court refrain from deciding the validity of the patents until after it has performed claim construction. Claim construction, however, "is not an inviolable prerequisite to a validity determination under § 101." *Bancorp*, 687 F.3d at 1273. Plaintiff argues that there is a disagreement over interpretation of terms "sensors," "physical measurement," "computing device," and "cryptographic means." *See* Opp. at 16-17. Plaintiff has not, however, offered an alternative construction for this Court to consider and, indeed, applies the plain meaning throughout its brief. Accordingly, Plaintiff has not articulated any reason why the Court "w[ill] lack a full understanding of the claimed subject matter if it d[oes] not first construe the claims." *See Cyberfone Sys. LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012).

Contrary to Plaintiff's contentions, resolving § 101 issues before claim construction is hardly unusual. *See Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, Nos. 11-2501 (MAS)(TJB), 12-9690 (MAS)(TJB), 2013 WL 3964909, at *3 (D.N.J. July 31, 2013) (invalidating patent claim under § 101 on a motion to dismiss, without formal claim construction and analyzing 242 claims from several related patents as one representative claim); *Cyberfone*, 885 F. Supp. 2d at 715 (invalidating patent claims under § 101 on motion for summary judgment, without formal claim construction).

In *Lumen View* the court rejected Plaintiff's contention that claim construction is necessary before addressing the § 101 inquiry. *See* 984 F. Supp. 2d at 205. The court explained that "[w]hile claim construction may sometimes be helpful in resolving a Section 101 motion where detailed explication of the claims in a patent would reveal material legal issues," it is not

required in every case.  *Id.*  With respect to the patent before it, the court determined that claim construction was unnecessary, reasoning that the patent's claims are "straightforward" and that "[n]o components are opaque such that claim construction would be necessary to flush out its contours."  *Id.*

In the instant case, Plaintiff does not claim that terms such as "sensor" are narrower than the plain meaning.  Indeed, it can't—there is no disclosure or recitation, anywhere in the patent or claims, of an electric meter sensor, or even a sensor that measures voltage or current.  Plaintiff's contentions thus rely on "sensor" being construed to cover *any* sensor.

**C.      A More Definite Statement Will Narrow The Issues Without Prejudicing Plaintiff**

At the very least, the Court should require Plaintiff to identify the claims at issue.  Plaintiff does not deny that the Court has the discretion to do so.  Although such relief might be unnecessary in some cases, it is warranted here.  Defendants should not be forced to go through discovery to determine what claims are at issue, particularly when such claims should be invalidated at the Rule 12 stage.  The need for this relief is highlighted by the fact that, in an effort to find allegedly narrow patent-eligible claims, Plaintiff relies in its opposition on claims that have no reasonable application to Defendants' electric meters.  *See* Opp. at 9 (relying on claims referring to a "biometric measurement" or a "chemical measurement").

### III.      CONCLUSION

For all of the foregoing reasons, Defendants CenterPoint and Itron respectfully submit that Plaintiff's Complaint fails to state a claim for relief and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, the Court should require the Plaintiff to provide a more definite statement of the patent claims alleged to be valid and infringed so that the Court may make an ultimate determination under § 101.

Dated: August 4, 2014

Respectfully submitted,

*/s/ Ramsey M. Al-Salam*
Ramsey M. Al-Salam, Bar No. 18822
RAlSalam@perkinscoie.com
Stevan R. Stark, Bar No. 39639
SStark@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
206-359-6385/Fax 206-359-7385

ATTORNEYS FOR DEFENDANT
CENTERPOINT ENERGY HOUSTON
ELECTRIC, LLC, AND ITRON, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 4, 2014. All other counsel of record will be served via facsimile or electronic mail pursuant to Local Rule CV-5(d).

/s/ *Ramsey M. Al-Salam*
Ramsey M. Al-Salam