IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CERTIFIED MEASUREMENT, LLC | § | |
| | § | |
| v. | § | Case No. 2:14-CV-627-RSP |
| | § | |
| CENTERPINT ENERGY HOUSTON | § | |
| ELECTRIC LLC, ET AL. | § | |

**MEMORANDUM ORDER**

Before the Court is the Motion to Transfer Venue to the Houston Division of the Southern District of Texas filed by CenterPoint Energy Houston Electric, LLC ("CenterPoint") and Itron, Inc. ("Itron") (collectively, "Defendants"). (Dkt. No. 16, "Motion to Transfer.") In their Motion to Transfer, Defendants argue that the Southern District of Texas is a clearly more convenient forum for this case. Plaintiff Certified Measurement, LLC ("Certified") opposes transfer. After considering all of the record evidence and weighing the various factors, the Court finds that Defendants have failed to carry their burden of showing that the Southern District of Texas is a clearly more convenient venue for this case. Accordingly, Defendants' Motion to Transfer (Dkt. No. 16) is **DENIED**.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Certified is a limited liability company organized under the laws of the State of Delaware, and having its principal place of business at Two High Ridge Park, Stamford, Connecticut 06905. (Dkt. No. 1 at ¶ 1.) On May 14, 2014, Certified filed this suit against CenterPoint and Itron, (collectively, "Defendants"). In its original complaint, Certified contends CenterPoint is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston, Texas, and further contends Itron is a corporation organized under the laws of the State of Washington and having its principal place of business in

Liberty Lake, Washington. (*Id.* at ¶¶ 2–3.) On January 21, 2015, Certified amended its complaint against Defendants. (Dkt. No. 47, "First Amended Complaint.") In its First Amended Complaint, Certified accuses Defendants of infringing United States Patent Nos. 5,828,751; 6,282,648; 6,289,453; and 8,549,310. Defendants now move the Court pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Southern District of Texas. (Dkt. No. 16.)

### APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the

avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

### A. Proper Venue

Neither party disputes that venue is proper either in the Eastern District of Texas or the Southern District of Texas as to Certified, CenterPoint, and Itron.

### B. Private Interest Factors

#### 1. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of

non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343–44.

Defendants' motion sets forth a series of statements arguing that this prong weighs in favor of transfer. (Mot. at 8–9.) For example, Defendants argue CenterPoint's employees are located in and around the Southern District of Texas and note that the Houston courthouse is located just a half a mile from CenterPoint's headquarters. (*Id*. at 8.) Defendants conclude an additional 200-mile car ride to Marshall Texas, in contrast with the Houston commute, "alone compels transfer." (*Id*.) This heavy emphasis that Defendants place on particular ties with Houston completely ignores the remaining parties to this suit, Itron and Certified.

Regarding Itron's witnesses and Certified's witnesses, Defendants cite—on multiple occasions—the purported difficulties in obtaining a direct flight from these witnesses' respective out-of-state locations to this Division and its neighboring airports. (*Id*. at 9.) The Court cannot agree that the Southern District is more convenient simply because there are fewer direct flights into local airports located in or around this Division as compared to those into Houston, Texas. Accepting this argument would mean that *any* courthouse in the United States situated in a less populated area as compared to a major city such as Houston, Texas—offering fewer direct flights—would be less convenient to witnesses requiring air transportation. This cannot be so. Such a broad statement completely ignores other travel-related cost and convenience

considerations such as traffic congestion, overall distances between airports and their respective courthouses, and the like. Finally, the Court notes that Defendants provide no treatment under this heading as to costs to potential third-party witnesses.

Accordingly, evaluated as a whole, this factor weighs slightly against transfer.

## 2. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Defendants' motion states "[a]ll of CenterPoint's key witnesses and documents are located in Houston." (Mot. at 7) (citing Exh. 2, Mercado Decl., Dkt. No. 16-2 at ¶¶ 10–11). Specifically, Defendants refer to "CenterPoint's marketing and engineering groups, physical samples of the accused devices, and document regarding the development, marketing, and sales of the accused systems." (*Id.*) What Defendants' motion does not reference is the relative ease of access to sources of proof as to the other defendant, Itron. Rather, Defendants' motion focuses on Certified's ties to Connecticut and concludes "any documents which plaintiff will produce in this action could just as easily be produced from its principal place of business in Connecticut." (*Id.*)

In their Reply, however, Defendants cite to a supplemental declaration of Michel Cadieux that identifies two Itron individuals most knowledgeable "regarding the design, development and functionality of the accused meters . . . ." (Exh. 1, Suppl. Mercado Decl., Dkt. No. 23-1 at ¶ 4) This declaration states that one of these individuals resides in Washington, and the other in South Carolina. (*Id.* ¶ 3.) Despite their reliance on these two individuals in their briefing, Defendants summarily dismiss the locus of Plaintiff's documents because they can purportedly be "just as easily . . . produced from its principal place of business in Connecticut." (Mot. at 7.) Assuming

- 5 -

Defendants' statement to be true, it is unclear why the same cannot be said of Itron's Washington- and South Carolina-based sources of proof as well.

Evaluated as a whole, and determining the majority of the relevant documents to be located in Houston as to CenterPoint, with the majority of the remaining parties' documents (and presumably third parties' documents) located outside of Texas, the Court finds this factor only weighs slightly in favor of transfer.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. FED. R. CIV. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a). Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

Under this heading, Defendants essentially offer no *evidence* to support transfer. Rather, Defendants—through attorney argument—generically refer to CenterPoint employees (both current and former) as *potential* material witnesses and speculate as to whether these potential witnesses will resist appearance in the absence of a Court order. (Mot. at 7.) Because CenterPoint is a party to this suit, the location of its current employees would not affect the analysis here. Moreover, the unnamed former CenterPoint employees Defendants refer to in the generic sense appear to primarily reside—by Defendants' own admission—within the State of Texas. (*See, e.g.*, Exh. 2, Mercado Decl., Dkt. No. 16-2 at ¶ 10) (declaring that CenterPoint's witnesses are

located in Houston, Texas). Pursuant to the Federal Rules, this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. FED. R. CIV. P. 45(c)(1)(B). Indeed, under the Federal Rules, Certified could compel attendance at trial as to any witnesses located within the State of Texas involved in Defendants' operations and ongoing activities within the state. Moreover, Defendants fail to identify *any* Itron witness or third-party witness for whom compulsory process would be required.

Accordingly, taken as a whole, this factor weighs slightly against transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Defendants argue this factor is neutral. (*See* Mot. at 9) ("There is little possibility of delay and/or prejudice if transfer is granted.") Prior to the filing of Plaintiff's response to Defendants' Motion to Transfer, the Court set a scheduling conference and entered a proposed schedule that set critical dates in its Docket Control Order, including dates of compliance with this Court's local rules as to the parties' invalidity and infringement contention deadlines. (Dkt. No. 19.) Indeed, by the time briefing for Defendants' Motion to Transfer completed, the Court already held the scheduling conference and the parties submitted their joint Docket Control Order shortly thereafter (*See* Dkt. No. 30) (reflecting a November 2015 trial setting). Given this schedule, it is nearly certain that the transfer of this case would seriously delay its disposition. Accordingly, this factor weighs against transfer.

## C. Public Interest Factors

### 1. Local Interest in Having Localized Interests Decided at Home

Defendants argue the Southern District of Texas has a local interest in this case because, among other things, ". . . CenterPoint is headquartered in Houston, and because the accused

Energy InSight system with the Itron OpenWay meters is deployed there . . . ." (Mot. at 11.) Moreover, Defendants argue this lawsuit "calls into question the work and reputation of CenterPoint's employees that work in the Southern District" and, thus, this prong "strongly favors transfer." (*Id.*) The Court disagrees.

First, regarding the location of CenterPoint's headquarters, to the extent Defendants' position is staked upon a connection not to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather a connection of some residents of the Southern District of Texas, financial or otherwise, to CenterPoint itself, the Court notes that this raises troubling fairness implications and affords it little weight. 545 F.3d at 318. Second, regarding CenterPoint's employees, though it is clear the majority of CenterPoint's customers are located in the Southern District (and presumably, therefore, the majority of its employees), it is clear from Defendants' evidence that CenterPoint's customer base extends into this District as well. (*See* Exh. 2, Mercado Decl., Dkt. No. 16-2 at ¶ 9) (illustrating CenterPoint's service territory as extending into Liberty County which, indisputably, is located within the Eastern District of Texas). Finally, regarding the deployment of the accused infringing meters, Defendants' own evidence establishes that defendant Itron has a significant commercial presence across the country, including within this District. (*See* Exh. 3, Cadiuex Decl., Dkt. No. 16-3 at ¶ 5) ("Itron's OpenWay® CENTRON® and the OpenWay architectures are marketed and sold nationwide.")

Accordingly, evaluated as a whole, at best, the Court finds this factor to be neutral

### 2. Administrative Difficulties Flowing From Court Congestion

Defendants argue this prong slightly favors transfer to the Southern District of Texas. Specifically, in supporting its arguments, Defendants cite the average time from filing to trial in the Eastern District and Southern District and compare the number of cases per judge in each of the respective districts. (*See* Mot. at 10) (arguing in favor of transfer due to the higher case load

per judge in the Eastern District as compared to the Southern District). In actuality, the median time from filing to trial for civil cases in this district is 21.9 months, whereas the comparable time in the Southern District of Texas is 24.7 months, for the latest period covered in the national statistical reports. This factor weighs against transfer.

> **3. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

Defendants concede that the remaining two public interest factors are neutral. (Mot. at 11.) Certified states these two factors are neutral as well. (Opp. at 15.) The Court agrees and finds these factors to be neutral to the transfer analysis.

## CONCLUSION

A motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this is not such a situation. Only one factor weighs in favor of transfer as compared to the four factors that either weigh against transfer or slightly against transfer and the remaining three that are neutral. On balance, Defendants have fallen short of meeting their burden to show that the Southern District of Texas would be a clearly more convenient forum than the Eastern District of Texas. Accordingly, Defendants' Motion to Transfer Venue (Dkt. No. 16) is **DENIED**.

**SIGNED this 10th day of March, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE